## W. P. McCONNELL v. R. P. HAMM, *Treasurer*.

MUNICIPAL BONDS, *Issued for a Private Purpose, are Void; ·Disposal of Moneys Collected as Taxes to Pay Such Bonds and Coupons.* The city of Neosho Falls issued certain bonds to a private individual to aid a purely private enterprise, and which were therefore wholly *ultra vires* and void. Afterward the city council passed an ordinance providing for a levy of taxes to pay certain coupons on these bonds. The amount of this levy was reduced by the city clerk without authority, and as reduced transmitted to the county clerk, and entered by him in a separate column on the county tax-roll, and then the roll turned over to the county treasurer. The county treasurer thereafter, at the usual taxpaying time, without the issue of any personal tax-warrants, or any attempt to sell the real estate, received from the taxpayers this tax and paid it over to the city treasurer. The city treasurer refused to pay it over on demand to the holder of the coupons: *Held*, That the holder could not maintain an action against the treasurer for the money thus received.

*Error from Woodson District Court.*

ACTION by *McConnell* against *Hamm*, to recover $140
alleged to be in his hands as treasurer of the city of Neosho
Falls, legally and properly payable to plaintiff as owner and
holder of certain bonds and coupons. All the necessary facts
appear in the opinion. The district court, at the June Term
1874, gave judgment in favor of defendant, and plaintiff
brings the case here on error.

*C. B. Graves,* for plaintiff:

The answer of Hamm presents no defense to the petition.
It simply alleges the illegality of the bonds and coupons.
But McConnell did not sue upon the bonds or coupons, and
does not rely upon their validity. The publication of the
ordinance under and by virtue of which the bonds and cou-
pons were issued; the publication of the ordinance levying
the tax; the fact that the tax was a specific one, charged
separately, not blended or mixed with any other; the fact
that the payment of the tax was not preceded by any legal
act or process tending to jeopardize either person or property,
together with the presumption that every man knows the law,
show that the tax was paid voluntarily, and cannot be recov-
ered by the taxpayers. (5 Kas. 412; 8 Kas. 431; 1 Ohio St.
265, 535.)

To whom then does the money belong? McConnell held
a claim against the taxpayers, one which was charged up
against each of them proportionately — a claim which they
were under no legal obligation to pay, perhaps, but neverthe-
less one which they did pay with a full knowledge of all the
facts, and therefore with the intention and desire that McCon-
nell, or whoever should be the owner and holder of such
claim when the same became due, should receive the money.
This seems conclusive, since the payment was unaccompanied
by any instructions to the contrary. Certainly, the taxpayers
had a right to make such a disposition of their money. Evi-
dently they tried to make such disposition of it; and how

any one can rightfully interfere with such disposal, does not seem clear. Can Hamm question their legal liability for the payment of such claim, by interposing in his own behalf a defense available only to the taxpayers, and one which they have expressly waived by refusing to take advantage of it? The money was not paid to the city in liquidation of any claim, or contributed to any fund: hence the city has no more right to or interest in it than a mere stranger. The same is true of Hamm, and every other person save McConnell. The money was received by Hamm in trust for the use and benefit of McConnell, and he cannot divert or appropriate it to any other purpose, or refuse to apply it to the use intended by the taxpayers. 3 Blk. Com. 432; 4 Kent Com. 307; Story's Eq., §§ 972, 1041, 1196; 2 Kas. 61; 8 Kas. 458; 5 Am. L. Reg. 98.

The opinion of the court was delivered by

BREWER, J.: This case was tried by the court, in the court below, on an agreed statement of facts, which may be briefly stated as follows: To aid in the construction of a mill for the manufacture of wool in the city of Neosho Falls, Woodson county, said city on the 20th of June 1872, issued and donated to R. P. & R. W. Pilling & Bro. its bonds in the sum of $11,000, in denominations of $100 each, numbered successively from 1 to 110, inclusive, payable in ten years, and bearing interest at 7 per cent. per annum, with coupons attached, numbered successively from No. 1 to 20, inclusive, payable on the first day of February and August of each year respectively. On the 30th of August 1872, said city, by ordinance duly published, levied a tax for the express purpose of providing for the payment of interest-coupons Nos. 2 and 3 of so many of said bonds as were numbered from No. 37 to No. 50, and from No. 85 to No. 110, inclusive. Between the passage and publication of said ordinance the amount of said levy was changed by the city clerk, and reduced in amount, without authority. Said levy was then transmitted by the city clerk to the county clerk, and by him

charged on the tax-roll of said county, in a separate column. Between November 1st 1872, and January 15th 1873, the taxpayers of said city, without any legal process or compulsion, paid to the treasurer of said county the tax levied as aforesaid for the purpose of redeeming said coupons Nos. 2 and 3. On the 15th of January 1873, the treasurer of said county paid said tax to Hamm, who was and is the treasurer of the city of Neosho Falls, and who now has the same in his possession and under his control. McConnell, at and before the date of said tax levy, was, and he is now, the owner and holder of said coupon No. 3, which he duly presented to Hamm on the 31st of January 1874, and demanded the payment of said money, which Hamm refused and still refuses to make, either in whole or in part. Those of said bonds numbering from No. 37 to No. 50, inclusive, were registered in the state auditor's office August 24th 1872, and those numbering from No. 85 to No. 110, inclusive, were so registered on the 9th of October 1872.

Upon these facts the district court found for the defendant. Was there error in this? It is not disputed but that these bonds were illegal and void, as issued for a purely private purpose; but the claim is, that the taxpayers voluntarily paid this money over for the purpose of paying the coupons, and that the city treasurer has no right to detain the money and prevent the accomplishment of this purpose, and that he holds the money in trust for the owner of the coupons, and must pay it over on demand. All men are presumed to know the law, and it must be presumed that the taxpayers knew that these bonds were illegal — knew that the ordinance providing for a levy was without authority, and the tax void. And still, with all this knowledge, they each take so much money and place it in the hands of the treasurer to pay over to the holder of these coupons. It is said that this is merely the application of a familiar principle of law, that if A. hands to B. money, and requests him to pay it to C., and B. accepts the money on that request, there is an implied promise to pay it to C., and C. can maintain an action against

him for it.   We are of opinion that such a principle is inapplicable to the facts of this case.   We are not justified in holding that the taxpayers voluntarily paid this money over to the treasurer with the request that he pay it to the coupon-holders, nor that there was any implied promise on the part of the treasurer to pay it to anybody.   The money was paid, not because they wished to pay it, but *as a tax*.   Granted, that the tax was without legal warrant, still it had all the forms of legality.   Certain instruments, in form promises to pay, had been issued by the municipality.   To pay those instruments the city council, the proper authority, passed an ordinance directing the levy of a tax.   The city clerk, the proper officer, transmitted this as a legal and proper levy to the county clerk.   True, he reduced the amount of the levy, but whether that was known to the taxpayers or not, is not stated; and whether, if known, it would have invalidated the tax if otherwise legal, may well be doubted.   The county clerk accepted the levy as legal and proper, and entered it upon the county tax-roll, and passed the roll over to the county treasurer.   At the accustomed tax-paying time the taxpayers come, and finding this tax on the tax-roll, pay it.   They pay it because it appears in form at least a charge against their property, and for the purpose of removing that charge.   The county treasurer received it as tax-money, and as such paid it over to the city treasurer.   Now, because all these parties, officers, authorities, and taxpayers erred in their judgment of the legal rights, duties, and obligations of the city, and the taxpayers, and without proof of any express request or actual wish of the taxpayers, shall it be held that when they went through the form of paying taxes they were not paying taxes, but simply engaged in a voluntary private transaction of handing money to one private individual with the request that he pay it to another, and that the treasurer when receiving taxes as treasurer, and receiving only such moneys as appear upon his books due as taxes, is nevertheless entering into a private engagement with the taxpayer to carry out his personal wish

in respect to the receipt and payment of money? The maxim, that every one is presumed to know the law, is, as every one really knows, a pure fiction. True, public policy requires its recognition, and general application; but when the question arises as to the actual state of a man's mind, this legal fiction does not compel the court to find the fact to be what the testimony clearly shows it not to be. Here, there was no express request from the taxpayers to the treasurer to receive the money and pay it to the coupon-holders, and no express agreement of the treasurer that he would so do; and the circumstances clearly negative any such implied request or promise. To sum the matter up, a party to whom neither the taxpayers nor the city owes a dollar asks the court to compel the official custodian of the city's funds to pay him a portion of the money in his hands received in the form and through the processes of taxation, upon the claim that these taxpayers placed these moneys in the treasurer's hands, and the treasurer received them upon the request on the one hand and the promise on the other to receive the moneys and pay them over to the claimant, when there is no proof of any such express promise or request, or that the parties acted otherwise than in obedience to the supposed obligations of the taxing process and official station. We see no error in the ruling of the court. Whether this money, thus erroneously paid, is the property of the municipality, or of the parties paying it to the treasurer, is a question to be decided whenever properly presented. It is enough now to decide that it does not belong to the plaintiff.

The judgment will be affirmed.

KINGMAN, C. J., concurring.

VALENTINE, J., concurring as follows: I concur in the judgment rendered in this case. The bonds mentioned in the case are unquestionably void for reasons stronger than those mentioned in the foregoing opinion, and therefore the tax levied to raise a fund with which to pay interest on such bonds is also void. The tax however was levied by the city;

16—16 KAS.

it was collected for the city; it was paid to city treasurer Hamm for the city, and it is the city that apparently owes the plaintiff McConnell. Hamm is under no obligation nor apparent obligation to the plaintiff McConnell, nor to any other one of the bondholders, but only to the city. He does not hold the fund in trust for the bondholders, but for the city. And he should pay it out only as the city directs. The city has never directed that the treasurer shall pay any portion of the fund to McConnell, and hence the plaintiff has no cause of action for the same against the treasurer.

Judgment affirmed.