No. 40,038

EARL R. BABCOCK, *Appellee*, v. CARL DOSE, doing business as CARL DOSE MOTOR SALES, Respondent, and PHOENIX INDEMNITY COMPANY, Insurance Carrier, *Appellants*.

(290 P. 2d 1046)

Opinion filed December 10, 1955.

*P. E. Nulton* and *R. L. Letton,* both of Pittsburg, were on the briefs for the appellants.

*Sylvan Bruner* and *Morris Matuska,* both of Pittsburg, were on the briefs for appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This is a workmen's compensation case. Appellants present the question involved in this appeal, "is whether the District Court erred in rendering judgment in favor of the claimant and against the appellants for hospital and medical attention in the sum of $650.00."

The facts shown by the record may be summarized as follows: The claimant, Earl R. Babcock, was in the employ of the respondent, Carl Dose, as a car salesman and in charge of a used car lot operated in Pittsburg. Claimant lived in Weir and respondent furnished him with an automobile, gas and oil for his use at all times and he used the automobile in going back and forth to Weir and for calling on prospective purchasers of used cars belonging to respondent. Claimant usually worked at the used car lot until 8:00 o'clock p. m., sometimes later. On the evening of May 22, 1954, claimant left the used car lot about 8:00 p. m. to go to his home, and to call on a prospective purchaser of a used car who had called on claimant a few days before and claimant had figured out a deal whereby he thought he might trade with him. While driving on U. S. Highway 69 he was involved in a collision with a truck driven by Maurice Gibbs, an employee of the Pontiac garage in Pittsburg. Claimant was severely injured and taken to the Mt. Carmel Hospital in an unconscious or semiconscious condition, where he was treated by Dr. Paul B. Leffler. The hospital has an emergency service and each physician or surgeon on the hospital staff takes turns in emergency service, a month at a time. Dr. Leffler was called by the hospital to treat claimant as it was his turn to serve. A few days later when the claimant was in condition to talk Dr. Leffler told him that he had been called to see him as an emergency case and if claimant preferred some other doctor could treat him. Claimant's wife told Dr. Leffler that the claimant desired him to continue with the treatment. Although the respondent and his insurance carrier had notice of the injuries, they made no effort to contact claimant or to provide a

physician or hospital treatment, and Dr. Leffler never talked with the respondents about treating claimant. The claimant was a bed patient in the hospital until July 1, when he was taken home and continued to be a bed patient for three weeks before he could be up and around, and Dr. Leffler treated him at his home during that time and later, even to the time of the trial before the commissioner.

On July 16, 1954, the claimant filed his written claim for compensation with the workmen's compensation commissioner. A hearing thereon was set for August 9, but on August 6, claimant requested the order setting the hearing for August 9, be set aside; that was done.

Thereafter claimant filed two actions to recover damages from Maurice Gibbs, the driver of the truck involved in the collision; one suit being filed in the federal court at Ft. Scott and the other in the state court at Pittsburg. These suits were brought for all damages which the plaintiff thought defendants were liable for, which included the hospital bills and the bill for Dr. Leffler. These cases were settled, on some date not stated, by the payment to claimant of a sum in excess of $11,000. The claimant then paid Dr. Leffler and the Mt. Carmel Hospital for his medical and hospital attention.

After the settlement of the damage suits and on February 28, 1955, claimant filed an application with the workmen's compensation commissioner requesting that his compensation claim be set for hearing. The commissioner set the case for hearing, and gave due notice to the parties. At the hearing before the commissioner the parties stipulated as follows:

"By stipulation of the parties it was agreed that the relationship of employer and workman existed at the time of the alleged accident, May 24, 1954; that the parties were governed by the workmen's compensation act of Kansas; that claimant's average weekly wage was $41.60; that respondent had actual knowledge or notice within 10 days; that written claim for compensation has been made in time; that claimant met with an accidental injury on the date alleged; that no medical services were supplied or any compensation paid; that the issues herein are (1) whether or not the accident suffered by the claimant arose out of and in the course of his employment with this respondent; (2) nature and extent of claimant's disability, if any; and (3) amount of compensation due, if any."

The hearing was had April 25, to 30, and all questions stipulated to be at issue were decided in favor of the claimant and adverse to respondent and his insurance carrier. On May 12, the commissioner filed an award in favor of the claimant for his injuries, but

did not include therein an award for the hospital and medical expenses. Both parties appealed to the district court; claimant on the sole ground that the commissioner did not allow for the medical expenses, and respondents for all adverse rulings.

On June 8, 1955, the matter came on for hearing before the district court upon the transcript of testimony of record adduced before the workmen's compensation commissioner. There was argument by counsel for claimant, and also by counsel for respondents. The court took the matter under advisement and to consider the briefs of the parties, which were furnished. On June 16, 1955, after considering the arguments of counsel and having carefully read the record taken before the workmen's compensation commissioner, and after considering the briefs filed by the parties, and being fully advised in the premises, the court made findings of fact, which included those stipulated, and further found that as a direct result of the accidental injury suffered by claimant, on May 22, 1954, the claimant became totally and permanently disabled, and that he was totally and permanently disabled for the performance of physical and manual labor and his usual occupation with the respondent Dose. The court computed the compensation due at the time, and directed that it be paid in one lump sum to claimant, the balance of the compensation to be paid at $24.96 per week. The court further found,

"The Claimant is entitled to a further award for his hospital expense and medical expense incurred during the first 120 days following his injury of May 22, 1954, in the total sum of $650.00 payable to the Claimant."

Judgment was rendered in harmony with these findings. Respondents have appealed from all adverse rulings but in this court they limit their argument to the question previously stated.

We turn now to the legal questions and first consider the amount of compensation provided in our statute 1953 Supp. to G. S. 1949, 44-510, which, in part, reads:

"The amount of compensation under this act shall be: (1) *Treatment and care of injured employees.* It shall be the duty of the employer to provide the services of a physician or surgeon, and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches, and apparatus, as may be reasonably necessary to cure and relieve the workman from the effects of the injury; but the cost thereof shall not be more than one thousand five hundred dollars ($1,500), nor shall the period of time during which same are to be provided exceed one hundred twenty (120) days from the date of accident: . . . If the employer has knowledge of the accidental injury and refuses or neglects to seasonably provide the benefits herein required, the employee may provide the same for him-

self and the employer shall be liable for such expense subject to the limitations herein expressed: . . ."

Subsection 3 of the same section, in part, reads:

"Where total permanent disability results from the injury, no compensation shall be paid during the first week of the disability, except that provided in paragraph 1 of this section, . . ."

This statute makes it clear that it is the duty of the employer to provide the medical attention, and if he has knowledge of the injuries and neglects to provide the benefits required, the employee may provide the same for himself and the employer shall be liable therefor. It emphasizes the duty to promptly provide these benefits by subsection 3.

Counsel for respondents rely heavily upon our statute G. S. 1949, 44-504, which, so far as it applies to an injured workman, and is otherwise pertinent, reads:

"When the injury . . . for which compensation is payable under this act was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured workman, . . . shall have the right to take compensation under the act and pursue his . . . remedy by proper action in a court of competent jurisdiction against such other person. In the event of recovery from such other person by the injured workman, . . . by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by him to date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien. Such action against the other party, if prosecuted by the workman, must be instituted within one year from the date of the injury, . . ."

In this court counsel for respondents argue that since claimant got pay for his medical expenses in the damage suit, for respondents now to have to pay it would result in having the claimant be twice paid for the same expenses. A similar question was raised and disposed of by this court in *Clifford v. Eacrett*, 163 Kan. 471, 183 P. 2d 861, where it is said:

". . . Appellants emphasize the fact that the judgment in the damage action was for all damages sustained. They argue it would constitute double recovery to permit the workman to also recover compensation for the same injury. If some double compensation actually results we know of nothing to prevent the legislature from authorizing its recovery from two parties where the liability of one party arises under the compensation law, which is a liability arising on contract (*Moeser v. Shunk*, 116 Kan. 247, 226 Pac. 784), and the other from an invasion of common-law rights. . . ." (p. 476.)

In fact, the Clifford case is good authority for the holding of the court in this case. The pertinent syllabus reads:

"The provisions of G. S. 1945 Supp. 44-504 examined and construed in connection with former statutory provisions on the same subject and *held:* ( *a* ) It was intended to retain for an injured workman, his dependents and personal representatives, the right to compensation provided by the workmen's compensation act and to grant the additional right to pursue his or their remedy for damages against any third party whose negligence was the legal cause of the injury; and ( *b* ) the recovery by the workman of a judgment for damages against such third party was not intended to preclude his collection of subsequent workmen's compensation under the terms and provisions of that act."

When an employer refuses or neglects to pay the medical expenses provided for in the statute and the injured workman himself has to pay them, the statute authorizes his recovery from respondent without regard to where he gets the money. He might have borrowed it, or paid it from his savings, or paid it from money collected on an accident insurance policy, or paid it from money collected from the third party wrongdoer.

We find no error in the record. The judgment of the trial court is affirmed.

THIELE and PRICE, JJ., dissenting.