No. 42,546

ELMER LEE FLOTT, Claimant, *Appellant,* v. WENGER MIXER MANU-
FACTURING Co., Respondent, and HARDWARE MUTUAL CASUALTY
COMPANY, Insurance Carrier, *Appellees.*

(367 P. 2d 44)

Opinion filed December 9, 1961.

*Harry A. Lanning,* of Seneca, argued the cause, and *William M. Drumm,*
also of Seneca, was with him on the briefs for the appellant.

*Thomas M. Van Cleave, Jr.,* of Kansas City, argued the cause, *Robert M.
Finley* and *Harry E. Miller,* both of Hiawatha, *Willard L. Phillips, P. B.*

*McAnany* and *James J. Lysaught,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation case from an order and judgment of the district court of Nemaha County reversing, vacating and setting aside an award of compensation made by the workmen's compensation commissioner to the claimant.

Basically, the controlling question is whether the 1955 amendment to G. S. 1949, 44-504, now appearing as G. S. 1959 Supp., 44-504, applies to the factual circumstances presented by the record in this case. The injury occurred to the workman prior to the effective date of the amendment, but the recovery by judgment in a suit against the third party occurred subsequent to the effective date of the amendment to the statute.

The essential facts necessary to a complete understanding of the issues presented on appeal may be stated as follows:

For almost a year prior to the 29th day of November, 1954, the claimant (appellant) was employed by the Wenger Mixer Manufacturing Co., (appellee) of Sabetha, Kansas, as a salesman and sales manager. He called on feed mills and made sales of feed mixing and other feed producing machinery manufactured by his employer. He was also responsible for laying out the installation of such machinery. His average weekly wage during the six months' period immediately preceding his accident was $165.95.

On the 29th day of November, 1954, the appellant met with personal injury by accident at Shenandoah, Iowa, while employed by the respondent. It is unquestioned that the injury arose out of and in the course of his employment with the respondent, and that the relationship of workman and employer existed at the time of his injury. The parties were and are governed by the Kansas workmen's compensation act. The insurance carrier was the Hardware Mutual Casualty Company (appellee).

The appellant was injured by falling into the revolving hammers of a hammer mill which was used to crush and grind feed. The revolving hammers were on a cylinder driven by a 125 h. p. motor. The appellant's feet and legs were severely mangled causing him to sustain a temporary total disability. At the hearing the appellant testified he was totally unable to perform ordinary manual labor and in his opinion his disability was permanent.

On the 4th day of June, 1955, the appellant filed an action in the United States District Court for the Southern District of Iowa, Southern Division, against Johnson Bros. Mills, Inc., for the recovery of damages on account of his injuries sustained by the accident of November 29, 1954. The appellant testified that Carl Keller, an adjuster for Hardware Mutual Casualty Company, called upon the appellant with one or more of the attorneys in the law firm of Baylor, Evnen & Baylor of Lincoln, Nebraska, while the appellant was in the Sabetha hospital, and also on a subsequent visit. According to the appellant Mr. Keller stated that said law firm was representing "them" for the purpose of this particular lawsuit. This firm filed and prosecuted the damage suit for the appellant.

On the 11th day of May, 1956, the appellant recovered a judgment against Johnson Bros. Mills, Inc., for $50,000.

In July, 1956, by agreement of the parties, after Johnson Bros. Mills, Inc., had filed a motion for a new trial and was threatening to appeal, the $50,000 third party judgment was settled for $45,000.

On the 29th day of August, 1956, the attorneys, Baylor, Evnen & Baylor of Lincoln, Nebraska, had collected and had in their possession the $45,000, plus some court costs reimbursed that had been advanced by Hardware Mutual. On this date the appellant, accompanied by Harry A. Lanning, an attorney of Seneca, Kansas, met the Hardware Mutual adjuster at the law office of the above attorneys in Lincoln, Nebraska, at which time a settlement between the appellant, Hardware Mutual and the Lincoln attorneys was agreed upon. Hardware Mutual had paid compensation and medical bills pursuant to the Kansas workmen's compensation act to and for the appellant prior and up to the date the judgment was paid in the amount of $6,018.48, and in the settlement Hardware Mutual was paid or credited with this amount out of the judgment proceeds. The accounting made in settlement was as follows:

"In Account With
Baylor, Evnen & Baylor

| | CR. | DR. |
|---|---|---|
| Received in settlement | $45,000.00 | |
| Reimbursement of court costs | 447.84 | |
| Subrogation, Hardware Mutual Casualty Company | | $ 6,018.48 |
| Proportionate share of expense, figured at 3898/4500ths of $1435.88, being total costs and expense of $1,-883.72 reduced by reimbursed court costs of $447.84 | | 1,243.78 |

Remittance of court costs to Hardware Mutual Casualty
Company .................................... .  447.84
Fee, figured at ⅓ of $37,737.74, being settlement of
$45,000.00 less subrogation of $6018.48 and propor-
tionate share of expense $1243.78 ...............  12,579.25
Remittance herewith ................ ...........  25,158.49

$45,447.84  $45,447.84

I hereby August 31, 1956 approve of the above accounting and agree to distribution in accordance therewith.

Lee Flott"

The appellant testified that at the time this settlement was agreed upon Mr. Keller, the adjuster for Hardware Mutual, stated, as a part of the discussion that led up to the agreement, that "all future medical and compensation would be paid by the company, the Hardware Mutual Insurance Company, up to the full amount of its obligation, under its policy;" that Mr. Keller offered a lump sum settlement as to workmen's compensation but it was not agreed upon; and that the appellant relied upon Mr. Keller's statements to the effect that the company would continue making medical payments and compensation to the extent of its liability under the policy in making such settlement.

The parties stipulated at the hearing before the examiner concerning statements made at the Lincoln office. It was stipulated the appellant was told that Hardware Mutual Casualty Company "would thereafter continue to pay claimant's proper medical, surgical, nurse, hospital and medical or surgical apparatus and appliances and medicine for claimant to the extent of its liability under said policy," identified as the policy of workmen's compensation insurance that was in effect on the Wenger Mixer Manufacturing Co., giving its number, and "continue paying compensation to the claimant to the extent of its liability under the Workmen's Compensation Law of the State of Kansas." The policy of insurance was admitted into evidence and discloses an additional medical coverage endorsement to the extent of $10,000 attached to the policy.

After the above settlement Hardware Mutual *continued paying compensation and medical or hospital expenses of the appellant up to the 12th day of April, 1959*, compensation having been paid at the rate of $28 per week.

Application for hearing and claim for compensation was filed by

the appellant with the workmen's compensation commissioner on the 24th day of June, 1959.

At the hearing it was stipulated that medical and hospital expenses had been furnished the claimant by the respondent and insurance carrier in the amount of $3,195.42, all of which were itemized, and that compensation had been paid in the amount of $28 per week for 226 weeks totaling $6,328.

On the 28th day of September, 1960, the commissioner found that the appellant's average weekly wage was $165.95; that as a result of his injury he sustained a temporary total disability; that he should be awarded compensation at the rate of $28 per week for 415 weeks; and that the respondent and insurance carrier should be ordered to pay all reasonable and necessary medical expense that appellant had incurred and all further medical and hospital expense necessary or required by the appellant *not to exceed the applicable policy limits.* Whereupon an award was made accordingly, a portion of which reads:

". . . As of September 26, 1960, 303 weeks of compensation for temporary total disability are due the claimant at the rate of $28.00 per week, or $8,484.00 less compensation heretofore paid in the amount of $6,328.00, leaving a balance due the claimant of $2,156.00 which is ordered paid in one lump sum. The balance of compensation awarded herein is ordered paid at the rate of $28.00 per week for not to exceed an additional 112 weeks, or until the further order of the Commissioner."

On appeal the district court reversed the commissioner and denied compensation. In his memorandum opinion the trial judge, after citing *Ellis v. Kroger Grocery Co.,* 159 Kan. 213, 152 P. 2d 860, regarding the construction of the workmen's compensation act, and quoting the first three syllabi thereof, said:

"It is necessary to determine whether the amendment of 1955 was a change in substantive law or is merely procedural.

"The right of the respondent is against the money collected by the complainant in the third party action, and is an action in rem; the res was not created until subsequent to the adoption of the 1955 amendment in that the settlement was not made until time subsequent thereto. It would seem that the law in effect at the time of the creation of the res is applicable. The employer's right to reimburse, credit or lien does not attach until the employee effects a settlement or recovers a judgment against the third party. Until then any theoretical contingent 'rights' are best inchoate. It is the recovery which fixes the employee's obligation to reimburse; just as it is the date of injury that fixes the employer's obligation to compensation. In this case the 1955 amendment was in effect on the date recovery was made by the employee against a third party. It follows that the 1955 amendment is the controlling statute in

this case and that the award of the commissioner should be reversed and vacated.

"The question of whether the insurance carrier and respondent are entitled to recover any of the money paid to the complainant since the date of the third party recovery is not before the court in this case and no decision is made on that question."

Appeal has been duly perfected presenting the issues hereinafter considered. The parties concede *the credit for future payments* under the workmen's compensation act is the only matter before the court.

On May 1, 1955, an amendment to 44-504, *supra,* became effective. Prior to this amendment 44-504, *supra,* provided that in the event the injured employee should recover from a negligent third party by judgment, settlement or otherwise, the employer should be subrogated to the extent of the compensation and medical aid provided by him *to the date of such recovery* "and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien."

The 1955 amendment added the following to this section of the statute:

". . . *Provided,* That whenever any judgment in any such action shall be recovered by the injured workman, his dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment shall be credited against future payments of said compensation or medical aid. . . ."

The 1955 amendment also added at the end of this section of the statute the following sentence:

". . . The court shall fix attorney fees which shall be paid proportionately by the employer and employee in the amounts determined by the court."

Thus, briefly stated, it may be said the 1955 amendment made two changes in the 1947 act (G. S. 1949, 44-504): (*a*) It provided that whenever any judgment was recovered and actually paid the portion thereof which is in excess of the amount of compensation and medical aid paid to the date of recovery, *shall be credited against future payments;* and (*b*) that the court shall fix attorney fees to be paid proportionately by the employer and the employee in the amount determined by the court.

It is argued by the appellant that under the 1947 act, which was in effect at the time of this accident, when the appellant recovered

from the negligent third party the employer was not entitled to be subrogated except to the extent of compensation and medical aid provided by him to the date of such recovery. (*Clifford v. Eacrett,* 163 Kan. 471, 183 P. 2d 861; and *Babcock v. Dose,* 178 Kan. 700, 290 P. 2d 1046.)

The appellant's argument proceeds on the theory that the workmen's compensation law fixes the liability of an employer to his employee where both parties are under the act, and this liability is founded upon the contract of employment, the terms of the statute being embodied in the contract. (*Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784; *Johnson, Guardian, v. Milling Co.,* 116 Kan. 731, 229 Pac. 359; and *Davis v. Reed,* 188 Kan. 159, 360 P. 2d 847.)

The appellant further contends the rights of the parties under the statute in question are substantive, and are therefore determined by the law in effect on the date of the injury. (*Ellis v. Kroger Grocery Co.,* supra.) It is argued a statute is to be given a construction of retroactive effect only when the intention of the legislature that it shall have a retroactive effect is clearly expressed. (*Elam v. Bruenger,* 165 Kan. 31, 193 P. 2d 225, and cases cited therein.)

On the other hand, the appellees contend the statute in effect on the date of the third party recovery is controlling and that no vested or substantive rights of the parties hereto were changed by the 1955 amendment, the only change being the distribution between the employee and the employer of the amount recovered from the third party.

The appellees also contend the prospective or retrospective operation of the 1955 amendment is not the basic question, as the primary point to be considered is whether any vested rights accrued between the appellant and the appellees under 44-504, *supra,* prior to recovery from the third party.

Relying upon language in *Clifford v. Eacrett,* supra, the appellees argue the interpretation to be placed upon the statute here in question cannot include, or be limited to, the contractual rights and obligations between the employer and employee, but must be interpreted strictly on the basis of the statutory language.

The question presented by the foregoing arguments of counsel has not heretofore been passed upon by the Supreme Court, but it would at best be academic to now decide such question based upon the record presented in this case. The parties at the time of settle-

ment in August of 1956 placed their own interpretation upon the statute and thereby fixed their respective rights and obligations.

The third party judgment was far in excess of the insurer's liability under the applicable policy of insurance and the workmen's compensation act for both medical and compensation payments, and, if the 1955 amendment was the governing law, it would not have had to pay any more after the recovery in the third party action—the amount of its credit would have exceeded its obligations by a large amount. In view of this, its promise to continue paying the claimant to the extent of its liability under the policy and to the extent of its liability under the workmen's compensation law of the State of Kansas, coupled with its continued payments of both medical and compensation for two years and eight months, clearly established their construction of G. S. 1949, 44-504, and the nonapplicability of the 1955 amendment thereto.

Insofar as the appellees (the respondent and its insurance carrier) are concerned, they stand in the same position in this case, and the employer is bound by the acts of its insurance carrier. (See, 44-504, *supra.*)

The law favors the compromise and settlement of disputes and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. (*Nauman v. Kenosha Auto Transport Co.*, 186 Kan. 305, 349 P. 2d 931, including cases cited therein; and *Sutherland v. Sutherland,* 187 Kan. 599, 358 P. 2d 776.)

Obviously, the appellant changed his position by reason of promises and representations made by Hardware Mutual at the time of settlement. The lump sum settlement offer of Hardware Mutual as to future medical and compensation payments under the policy of insurance and the workmen's compensation act was rejected by the appellant. Had the appellant not believed and relied upon the promises and representations that the insurer would continue the compensation and medical aid payments, or had Hardware Mutual told the appellant it would insist on the credit under the 1955 amendment, the appellant woud have considered the offer in an entirely different light. Furthermore, had the appellees insisted upon the application of the 1955 amendment, the subrogation credit would have been larger and the deduction for attorney fees smaller. The appellant may have been far more difficult to deal with as to the amount of attorneys fees he was to pay. In other words, there

was consideration for the promise of Hardware Mutual that it would continue to pay the appellant medical aid to the extent of its liability under its policy of insurance, and compensation payments to the extent of its liability under the workmen's compensation law.

The appellees argue *"if the contention of the appellees is upheld* [as to the applicability of the 1955 amendment], *then* it is quite obvious a common mistake was made in May, 1956, and must and should be corrected at this time, as the claimant has been paid more compensation and furnished more medical and hospital aid than the provisions of the Kansas Workmen's Compensation Law requires." (Emphasis added.)

It is wholly gratuitous and self serving on the record here presented for the appellees to contend the appellant was *influenced* by mistake in making the settlement. If a mistake was made at all, it was the appellees who made it and not the appellant. Furthermore, the mistake, *if any,* was a *mistake of law* and not a mistake of fact. The parties at the time of settlement knew precisely what all the facts were and exactly what they were negotiating for in terms of dollars and cents.

It is a legal maxim that everyone is presumed to know the law. (*Ramsey v. Hand,* 185 Kan. 350, 343 P. 2d 225, cert. den. 362 U. S. 970, 4 L. Ed. 2d 901, 80 S. Ct. 956; *In re Estate of Freshour,* 185 Kan. 434, 345 P. 2d 689, 81 A. L. R. 2d 806; *George v. Oxford Township,* 16 Kan. 72; and *McConnell v. Hamm,* 16 Kan. 228.) The appellees, both doing business in Kansas, are presumed to have known the law of Kansas at the time of settlement, and if the 1955 amendment governed this case at that time they are presumed to have known it.

It has been held that a mistake of law does not excuse a party to a contract, unless it be a mutual mistake of both parties thereto, and then is analogous to a mistake of fact, but if there is mutuality of mistake, either of law or of fact, the party upon whom the burden rests must allege and prove such fact. (*Grant v. Isett,* 81 Kan. 246, 105 Pac. 1021.)

In *Janicke v. Telephone Co.,* 96 Kan. 309, 150 Pac. 633, Justice Rousseau A. Burch, speaking for the court, said:

"No precise or comprehensive rule can be stated governing the subject of relief from the civil consequences of a *mistake of law.* The mere fact that a contract was made or other conduct was induced by such a mistake is not enough. If it were, ignorance might be more profitable than knowledge, the certainty and security of property and other rights would be destroyed,

and the stability and tranquillity of society could no longer be maintained by means of the law. The mistake must be such that the parties are in effect unintentionally made to do something which would confer undue advantage or cause unjust prejudice unless corrected. *One party must be benefited or the other party burdened without consideration,* or the circumstances must otherwise be such that it would be unconscionable to deny reformation, cancellation or rescission; *and the party seeking absolvence must comply with all those conditions which are imposed on every one who invokes the aid of a court of equity. Besides this, the misconception must be of some plain rule of law which clearly would have governed if known and not of some principle of doubtful validity or uncertain application because not well established or defined; and if there be doubt or contention respecting legal rights, and instead of ascertaining and enforcing them parties with equal knowledge or means of knowledge settle the matter by fair compromise free from fraud, the compromise will stand, although it would not have been made had the law been understood."* (pp. 311, 312.) (Emphasis added.)

It has also been held where a person elects to pursue one of two statutory remedies, and upon the hearing of his claims under it is defeated because of its constitutional invalidity, he cannot on appeal change his position and elect to treat his petition as filed under the other statute. (*Enterprise v. Smith,* 62 Kan. 815, 62 Pac. 324.)

It is, of course, recognized that the promise of Hardware Mutual to continue making payments to the extent of its liability under the policy of insurance in question, and to the extent of its liability under the workmen's compensation law of the State of Kansas, was not incorporated in the written accounting heretofore quoted, but it was nevertheless made in the course of negotiations and relied upon by the appellant in making the settlement. It is therefore entitled to due consideration as a part of the contract of settlement. The appellees acknowledged their obligation as a result of the settlement and continued payment of compensation and medical aid from August 29, 1956, until April 12, 1959, a period of almost three years.

The right to subrogation may be waived or the subrogee may be estopped to assert his right thereto. It is said in 83 C. J. S., Subrogation, § 13, pp. 610, 611:

"Subrogation, being an equity springing from the relation between the parties, and created and enforced for the benefit and protection of the one in whose favor it is originated, may be modified or extinguished by contract, or may be waived, either expressly or by implication. . . .

. . . . . . . . . . . . . . .

"The ordinary doctrine of estoppel applies to the subrogee's right to subrogation. . . ."

In practice, it is required of everyone to take advantage of his rights at a proper time, and his neglect to do so will be considered as a waiver. Thus, it has been held any positive act done by the subrogee at the time of or subsequent to payment, inconsistent with the enforcement of the right, will be considered as a waiver. (*Davidson v. McKown*, 157 Kan. 217, 139 P. 2d 421; and see, *Shattuck v. Bank*, 63 Kan. 443, 65 Pac. 643.)

Technically, a distinction exists between "waiver" and "estoppel." Waiver is ordinarily the intentional relinquishment of a known right and is a voluntary act. It is the expression of an intention not to insist upon what the law affords. While it is consensual in nature, the intention may be inferred from conduct, and the knowledge may be actual or constructive, but both knowledge and intent are essential elements. Estoppel, on the other hand, is not consensual in character. It is recognized, not to give effect to a presumed intention, but to defeat the inequitable intent of the party estopped. It is the misleading of a party entitled to rely on the acts or statements in question, and a consequent change of position to his detriment. (*Marett v. World Fire & Marine Ins. Co.*, 160 Kan. 125, 160 P. 2d 664; *Seavey v. Erickson*, 244 Minn. 232, 69 N. W. 2d 899; and 29A Am. Jur., Insurance, § 1010, p. 184; see, also, *Pelischek v. Voshell*, 181 Kan. 712, 717, 313 P. 2d 1105.)

On facts analogous to the instant case the Supreme Court of California in *Jacobsen v. Industrial Acc. Com.*, 212 Cal. 440, 299 Pac. 66, said:

"[7] The respondent corporation insists that in the ascertainment of the amount of its lien its expenditures for compensation not yet paid but which it is obliged to pay in the future should be included. The petitioner replies that the statute specifies 'expenditures for compensation', which means, he argues, past expenditures for compensation only; that none but these may be asserted as a lien and that future expenditures under the award may not be included. We are inclined to agree that properly construed, the words 'expenditures for compensation' would include expenditures paid and to be paid under the award of the commission and that both should be allowed as a first lien on the judgment to the extent to which they are entitled. [8] The respondent corporation has, however, been reimbursed for expenditures already paid and it may not now be heard to claim reimbursement for amounts it is under obligation to pay for the following reasons: Said corporation received the notice required by the statute of the pendency of the action brought by its employee. It presented its application for a lien on the judgment to be rendered in the form of a stipulation for judgment, specifying therein the amount of its past expenditures only. If it desired to assert a lien for future expenditures, then was the time to do it. It failed then to assert its right and

must be deemed thereby to have waived it. Also by the terms of the stipulation for judgment, satisfaction of judgment and receipt of the amount of the lien successfully asserted, all of which documents were duly signed by its authorized representative, said corporation clearly led the peitioner herein to believe that no further lien would be asserted and thus estopped itself from making a claim for further reimbursement. The waiver of its right, assertable in court, would be all-sufficient, but in addition thereto we hold that the conduct of said corporation in the court proceeding has foreclosed it from taking a position before the Commission different from that assumed by it before the court. (Subd. 3, sec. 1962, Code Civ. Proc.; *Morris v. Standard Oil Co.*, 77 Cal. App. 720, 723 [247 Pac. 583].)" (pp. 449, 450.)

Upon all the facts and circumstances presented by the record herein, we think the appellees waived their right to claim a credit upon the appellant's third party judgment for future medical and compensation payments by their failure to assert such claim for credit at the time of settlement and distribution of the proceeds of the judgment, as agreed upon the 29th day of August, 1956. There could be no better proof that such was the intention, than the continued payment of compensation and medical aid from August 29, 1956, until April 12, 1959, a period of almost three years.

Furthermore, the statement of Mr. Keller, the adjuster for Hardware Mutual, on behalf of the appellees at the time of settlement, to the effect that the insurer would continue making payments to the extent of its liability under the policy of insurance in question, and to the extent of its liability under the workmen's compensation law of the State of Kansas, clearly led the appellant to believe that no further claim would be asserted for credit by way of subrogation, than the sum paid prior to the date of recovery of the third party judgment, and deducted as a subrogation credit in the accounting at the time of settlement. The appellees were thereby estopped from making a further claim for credit by asserting the 1955 amendment before the workmen's compensation commissioner in these proceedings.

The judgment of the lower court is reversed with directions to reinstate the award made by the commissioner, subject to such modification as may be necessary by reason of the additional delay in time.