No. 19,877.

H. O. JANICKE, Doing Business as THE WASHINGTON TELEPHONE COMPANY, *Appellee*, v. THE WASHINGTON MUTUAL TELEPHONE COMPANY et al., *Appellants*.

SYLLABUS BY THE COURT.

1. CONTRACT — *Between Two Telephone Systems — Monopoly of Local Service by One Not Inconsistent with Public Policy.* A contract between the plaintiff and the defendant, proprietors of two telephone systems serving different constituencies, and the city in which the central offices of the two systems are located, permitting the defendant to use the streets of the city on certain conditions, providing for free exchange between the patrons of the two systems, and providing that the defendant shall not install local telephones during the life of the plaintiff's franchise, examined and held to be consistent with public policy.

2. SAME—*Right of Rescission for Mutual Mistake of Law—Not Sustained.* Held further, that a claimed right on the part of the defendant

to rescind the contract because of an admitted mutual mistake of law regarding the authority of the city council to exclude the defendant from using the streets of the city was not sustained.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed July 10, 1915. Affirmed.

*W. D. Vance,* and *R. E. McTaggart,* both of Belleville, for the appellants.

*Edgar Bennett,* and *Charles W. Clarke,* both of Washington, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin a breach of a contract between two telephone companies. The answer was that the contract was void as against public policy and that it had been entered into under a mutual mistake of law. A permanent injunction was issued and the defendant appeals.

The plaintiff operates a telephone system with a central office in the city of Washington. He has a large number of local subscribers on individual and party lines and has toll lines extending into the surrounding country and connected with various other telephone exchanges. The defendant operates a rural telephone system with toll lines and connections. About October 25, 1909, the defendant made application for admittance to the city of Washington, which application the city council denied. The officers of the city, the officers of the defendant, and the plaintiff all believed the action of the city to be according to law, and after negotiations between them the contract which is· the subject of the action was executed on November 1, 1909, by the city and by the plaintiff and the defendant. The contract provided for the erection of poles on specified terms along a prescribed route to carry the cables and wires of the defendant to its central office in the city, the connection of the central offices of the plaintiff and the defendant by a cable to be installed and maintained at their joint expense, and free exchange between the patrons of the two telephone systems. The contract further provided as follows:

"It is further agreed and understood by and between the parties of this contract as a part of the consideration therefor that said Mutual Telephone Company party of the second part and all its assigns shall not during the period covered by this contract put in any telephone service in

the city of Washington, except in its central office such as is necessary for the operation of its rural and toll lines and its connections with the central office of the third party."

The contract took effect at once, but sometime after October 13, 1913, and before April 30, 1914, when the action was commenced, the defendant installed several telephones for local use in violation of the provision quoted. The petition alleged that the defendant was threatening to make other installations of the same kind.

Two telephone systems serving the same constituency place a useless burden upon the community, cause sorrow of heart and vexation of spirit, and are altogether undesirable. The public utilities commission, with its power over rates and sufficiency and efficiency of service, can quickly suppress any evil consequences of monopoly, and good public policy favors rather than discountenances a single system. In this instance the public was distinctly benefited by the arrangement whereby subscribers to each system, each operating in a different field, acquired the free use of the other.

No precise or comprehensive rule can be stated governing the subject of relief from the civil consequences of a mistake of law. The mere fact that a contract was made or other conduct was induced by such a mistake is not enough. If it were, ignorance might be more profitable than knowledge, the certainty and security of property and other rights would be destroyed, and the stability and tranquillity of society could no longer be maintained by means of the law. The mistake must be such that the parties are in effect unintentionally made to do something which would confer undue advantage or cause unjust prejudice unless corrected. One party must be benefited or the other party burdened without consideration, or the circumstances must otherwise be such that it would be unconscionable to deny reformation, cancellation or rescission; and the party seeking absolvence must comply with all those conditions which are imposed on every one who invokes the aid of a court of equity. Besides this, the misconception must be of some plain rule of law which clearly would have governed if known and not of some principle of doubtful validity or uncertain application because not well established or defined; and if there be doubt or contention respecting legal rights, and

instead of ascertaining and enforcing them parties with equal knowledge or means of knowledge settle the matter by fair compromise free from fraud, the compromise will stand, although it would not have been made had the law been understood.

When the defendant made application for admission to the city with its poles and wires the extent of the city's authority was a subject of considerable doubt and uncertainty, and was the subject of undetermined litigation elsewhere. The matter was not finally settled until January 8, 1910, when the decision in the case of *Telephone Co. v. Concordia,* 81 Kan. 514, 106 Pac. 35, was rendered. The opinion shows there was a fair ground for the contentions of both parties. After reviewing the legislation on the subject the court reached the following conclusion:

"The theory of all these acts appears to be that telephone companies have the right to build their lines into a city and to use the streets for that purpose, under such reasonable regulations as the city council may prescribe. . . . No company should undertake to enter a city and erect poles and string wires over or along streets, alleys or public grounds without making application and a proper effort to procure the passage of an ordinance defining the manner and place of construction of the contemplated lines. Such an application the council may not deny. It may regulate, but not exclude. The telephone companies get the right directly from the state, and not from the city. The city may prescribe terms and conditions upon which the right granted by the state shall be exercised, but it has no power to annul the right granted by the higher authority." (p. 517.)

The opinion of this court not then being available, the city of Washington denied the defendant's application. The defendant acquiesced in the city's view of the law. The plaintiff, as the holder of a franchise and the owner of an established telephone system in the city, was involved in the controversy, and the contract was entered into for purposes which it stated as follows:

"For and in consideration of the covenants and agreement hereinafter set forth and for the purpose of compromising and settling differences that now exist between the several parties hereto as to the conduct and management of the telephone business in the city of Washington, Washington County, Kansas, and adjacent territory and of adjusting the rights and privileges of the several parties hereto with reference to said business."

The result was the city gave up its contention concerning

the only matter about which the parties were mistaken, permitted the defendant to enter and occupy the public ways on conditions the reasonableness of which is not disputed, and the whole telephone situation was composed by a fair compromise which gave the public just what it was entitled to have, one local telephone system with free exchange between it and another system serving a different clientage. The infraction of the contract occurred four years after it was made. The defendant gives no intimation of when it learned the law publicly declared by this court on January 8, 1910, and the presumption is it did not act diligently on discovery of its rights because it is silent respecting the matter. No notice to the plaintiff of a change in the relationship of the two telephone systems appears, so that the plaintiff could readjust his business if necessary. No notice to the city that the defendant regarded the contract as no longer in force appears, so that the city might, if it desired, regulate the defendant's use of the streets unhampered by the contract. No purpose to give up the benefits which the defendant derives from the use of the plaintiff's telephone system by means of the cable connecting the two central offices is indicated, and the defendant is in the position of demanding relief, not from the contract, but from the disadvantages of the contract. These are not matters of estoppel to be pleaded and proved by the plaintiff. They are conditions imposed upon an exercise of the right to rescind on the ground of mistake, and upon every one who comes into a court of equity seeking equity.

The court is inclined to regard the contract as one which should be enforced notwithstanding the mistake of the parties respecting the power of the city over the use of its streets. Leaving at one side the scope and effect of the contract, it should be enforced as the result of a fair compromise. But beyond this, the defendant did not assume an attitude which challenged the favor of the court and authorized it to relieve the defendant from the obligation of the contract. Therefore, the judgment of the district court is affirmed.