No. 59,478

EARL W. ROSENBAUM, DONNA LOU ROSENBAUM, STEPHEN W. BROWN, and CHRISTA BROWN, *Appellants*, v. TEXAS ENERGIES, INC., *Third-Party Plaintiff/Appellee*, v. RUTH S. HILLARD, W. L. WALKER, III, and KATHRYN M. WALKER, *Third-Party Defendants.*

(736 P.2d 888)

Opinion filed May 1, 1987.

*Clifford L. Malone*, of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause, and *Laura L. Ice*, of the same firm, was with him on the brief for the appellants.

*Robert Eisenhauer*, of Hampton, Hampton, Johnston & Eisenhauer, of Pratt, argued the cause and was on the brief for the appellee Texas Energies, Inc.

The opinion of the court was delivered by

MILLER, J.: The plaintiffs, Earl W. Rosenbaum, Donna Lou Rosenbaum, Stephen W. Brown, and Christa Brown, brought this

action to prevent the defendant, Texas Energies, Inc., from deunitizing a unit it had formed of certain natural gas properties in Pratt County, in a part of which the plaintiffs had an interest. Defendant claimed it lacked authority to unitize the property in the first place, because of a mutual mistake in the lease agreement between Texas Energies, Inc., and the third-party defendants, Ruth S. Hillard, W. L. Walker, III, and Kathryn M. Walker, the owners of the other land in the unit. The trial court found the "Declaration of Unitization" void *ab initio*, upheld the action of the defendant in deunitizing the unit, and ordered reformation of the lease between Texas Engergies, Inc., and the third-party defendants. Plaintiffs appeal.

The facts are somewhat complex but undisputed. Texas Energies, Inc., is the lessee in an oil and gas lease originally executed by Earl and Donna Rosenbaum on February 10, 1983, covering a quarter section of land, the Southeast Quarter of Section 8. Texas Energies is also the lessee of a second lease executed by the third-party defendants on October 28, 1981, covering 240 acres described as the East Half of the Northwest Quarter and the Northeast Quarter of Section 17. The Northeast Quarter of Section 17 lies directly south of and adjoins the Rosenbaum quarter. After both leases were executed, the Rosenbaums conveyed their land to Stephen and Christa Brown, reserving one-half interest in all minerals in and under the land.

In March 1984, Texas Energies filed an affidavit indicating that gas was being produced in paying quantities from a well on the Hillard property. On the same day, it executed and filed a "Declaration of Consolidation and Unitization," purporting to create a 240-acre production unit comprised of 80 acres of the Rosenbaum land and 160 acres of the Hillard land. The producing well is on that portion of the Hillard land included within the unit. Shortly thereafter, Texas Energies sent the landowners a "gas division order and stipulation of interest" concerning production on the unit. Mrs. Hillard refused to sign the division order, claiming it did not reflect her agreement with Texas Energies. She claimed that when she negotiated the lease terms with Darlene Butts, Texas Energies' agent, she made it clear that she did not want her land unitized with any other land.

The Hillard lease contains a provision for unitization, which provides:

"The unitization of this lease or any portion thereof with any other lease or leases or portions thereof shall be accomplished by the execution and filing by lessee in the recording office of said county of an instrument declaring its purpose to unitize and describing the leases and land unitized, which unitization shall cover the gas rights only and comprise an area not exceeding approximately 240 acres. The royalty provided for herein with respect to gas from gas wells shall be apportioned among the owners of such royalty on minerals produced in the unitized area in the proportion that their interests in the minerals under the lands within such unitized area bear to the minerals under all of the lands in the unitized area. Any well drilled on such unit shall be for all purposes a well under this lease and shall satisfy the rental provision of this lease as to all of the land covered thereby; Provided, however, lessee shall be under no obligation, express or implied, to drill more than one gas well on said Unit."

The number "240" in this paragraph was typed and inserted to replace "640," the original number in the printed form lease.

Mrs. Hillard testified that Darlene Butts assured her that changing the printed "640" to "240" acres in the above paragraph of the lease would effectively preclude unitization. Mrs. Hillard testified that she had been unitized before on another lease, and did not want any part of a unitized lease again. She wanted the lease to include her 240 acres, so Darlene Butts marked out the printed figure in the lease and inserted the 240 acres to prevent unitization. Darlene Butts testified that this was one of the first leases that she secured for Texas Energies. She believed that by inserting the 240 acres and crossing out the 640 acres, this property could not be unitized. Darlene Butts made the change in the printed lease, and told Mrs. Hillard and her son that by inserting 240 and crossing out 640, the Hillard property could not be unitized.

The error was not discovered until Texas Energies sent the division order to Mrs. Hillard. Thereafter, Texas Energies filed a "Notice of Cessation of Unitized Operations" and later a "Corrected Notice of Cessation of Unitized Operations" with the Pratt County Register of Deeds. All of the disputed royalties from gas sold from this well have been paid by Texas Energies to the clerk of the district court.

The Rosenbaums and the Browns contend that the trial court erred in receiving evidence of mutual mistake regarding the Unitization Clause of the Hillard lease; that the evidence does

not support a finding of mutual mistake; that even if there were a mutual mistake, the trial court erred in ordering reformation of the Hillard lease; and that the unit was valid when formed, and cannot be unilaterally terminated by the lessee without the consent of all of the lessors in the unit.

We turn first to the question of the admission of evidence of mutual mistake. Plaintiffs' claim of error is twofold: (1) The Unitization Clause in the lease is unambiguous, and therefore parol evidence should be excluded; and (2) the issue of mistake is beyond the scope of the pleadings and the pretrial order.

The Unitization Clause of the Hillard lease, quoted above, is clear and unambiguous. This clarity, however, does not preclude the use of extrinsic evidence to show a mutual mistake. In *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 79-80, 630 P.2d 1107 (1981), we said:

> "In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms. *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 734, 515 P.2d 379 (1973). As between the original parties to a contract parol evidence to show mutual mistake may be introduced in an action to show the nonexistence of a binding contract. The rule that parol evidence is inadmissible to contradict or vary a written contract presupposes an action involving a valid existing obligation. *Branstetter v. Cox*, 209 Kan. 332, 335, 496 P.2d 1345 (1972). Parol evidence is admissible to show a mutual mistake which prevented the consummation of a contract that purports to be evidenced by a written instrument."

The Rosenbaums and the Browns were not parties to the original Hillard lease; they have not acquired that lease nor have they changed their position because of the content of that original recorded lease. They gave an entirely separate lease to Texas Energies. At issue here is the validity of a Unitization Clause as between the original parties to the lease, Texas Energies and the Hillard lessors. The Rosenbaums and the Browns have not changed their position or relied upon the provisions in the Hillard lease to their detriment. The trial court did not err in admitting extrinsic evidence to prove the existence of mutual mistake in this case.

In determining the breadth of a pretrial order, the general rule calls for liberal construction. *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 469, 657 P.2d 517 (1983). The pretrial order in the case at bar contained two issues which may be broadly construed to include the issue of mutual mistake. These are:

"(1) The applicability of the Parol Evidence Rule. . . . (3) Whether the Defendant . . . had the authority, right and power to create a valid gas unit at the time of the filing of the Declaration of Consolidation and Unitization . . . ."

It was clear to plaintiffs' counsel that mistake was an issue. Plaintiffs' counsel thoroughly briefed the mistake question in their trial brief on the applicability of the parol evidence rule. They noted that the Hillard lessors contended that the omission of language limiting the unitization authority was a mistake, but argued that no mistake could be demonstrated in this case.

The existence of a claim of mutual mistake was determinative of the admissibility of extrinsic evidence. It is abundantly clear from plaintiffs' trial brief that plaintiffs understood that mutual mistake would be an issue in the trial. The trial court did not err in admitting evidence of mutual mistake and in considering that as a principal issue in the trial.

The next issue is whether the evidence supports a finding of mutual mistake. Plaintiffs claim (1) that the contracting parties have a duty to read and understand a written contract; (2) if there was a mistake, it was unilateral and therefore does not justify reformation; and (3) the testimony of Mrs. Hillard and agent Butts regarding the mistake should be discredited.

This court follows the general rule that a contracting party is under a duty to learn the contents of a written contract before signing it. *Sutherland v. Sutherland,* 187 Kan. 599, 610, 358 P.2d 776 (1961). We have interpreted this duty to include the duty to obtain a reading and explanation of the contract, and we have held that the negligent failure to do so will estop the contracting party from avoiding the contract on the ground of ignorance of its contents. *Maltby v. Sumner,* 169 Kan. 417, Syl. ¶ 5, 219 P.2d 395 (1950). As a result of this duty, a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms. Such a person is so bound, however, only "in the absence of fraud, undue influence or *mutual mistake* as to [the contract's] contents." *Washington v. Claassen,* 218 Kan. 577, Syl. ¶ 2, 545 P.2d 387 (1976). Thus, the rule is inapplicable where there is a mutual mistake as to the contents and meaning of the contract.

The uncontroverted evidence, which we have recited, clearly

shows that both Mrs. Hillard and Darlene Butts, Texas Energies' agent, understood and intended that the lease provisions not permit unitization. In spite of this, plaintiffs claim that the mistake in the case at bar is unilateral. Plaintiffs argue that Texas Energies cannot be held to have been mistaken because, being experienced in the oil and gas business, it must be presumed to know and understand the effect of the Unitization Clause as written. Obviously Texas Energies recognized the clause as permitting unitization when it formed the disputed unit. Plaintiffs claim that the agent's inexperience and misunderstanding may not be used to excuse the principal. The law of agency generally imputes the knowledge of the agent to the principal. *Supreme Petroleum, Inc. v. Briggs*, 199 Kan. 669, 675, 433 P.2d 373 (1967). We have found no similar rule of law which imputes the knowledge of the principal to its agent. Rather, a principal is typically bound by the authorized acts and contracts of its agent. See, for example, *Ford v. Guarantee Abstract & Title Co., Inc.*, 220 Kan. 244, 268, 553 P.2d 254 (1976). Here the agent, because of inexperience, made a mistake in the course of her employment. She informed Mrs. Hillard, erroneously, that the clause as amended would not permit unitization of the Hillard land with any other tract. To adopt the plaintiffs' theory and impute the knowledge of Texas Energies to its agent, Darlene Butts, would effectively perpetrate a fraud upon the lessor. Texas Energies is not seeking to take advantage of the error of its agent, but has readily admitted that error and has sought to correct it. We hold that the mistake was bilateral and not unilateral. Butts' mistake is imputed to her principal.

Plaintiffs' final argument under this issue is that the testimony of Butts and Mrs. Hillard should be discredited because of self-interest. Mrs. Hillard's interest is clear—if the unit is found invalid, she and her son and daughter-in-law, Mr. and Mrs. Walker, are entitled to a greater share of the royalties than if the unit is valid. As to Ms. Butts, plaintiffs assert that by claiming a mistake, she is avoiding a lawsuit by the Hillard lessors for fraud and misrepresentation. However, it is not clear that any fraud was committed. There is nothing in the record to suggest that Butts intentionally misled Mrs. Hillard. Second, there is no evidence in the record of any threat to sue her for fraud. Third,

she is involved in this lawsuit, though not as a principal. Fourth, admitting her mistake has subjected her employer or her former employer to costly litigation. More than likely she has felt, or will feel, some consequences from this. Finally, if the unit is declared invalid, it would appear that the Rosenbaum lease, if not held by the unit production, will expire or has expired on its own terms for lack of development.

The district judge saw and heard the witnesses, weighed the testimony, and believed the testimony of Mrs. Hillard and Ms. Butts. It is not the role of this court to pass on the credibility of witnesses. When the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 736 P.2d 882 (1987); *Holly Energy, Inc. v. Patrick*, 239 Kan. 528, 722 P.2d 1073 (1986); *City of Council Grove v. Ossmann*, 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976). We conclude that the testimony of Mrs. Hillard and Ms. Butts provided substantial competent evidence. Their self-interest is certainly not so great as to necessitate disregard of their testimony. The evidence not only supports, but almost mandates, a finding of a mutual mistake.

Plaintiffs argue even if there was a mutual mistake, the trial court erred in ordering reformation of the Hillard lease. They argue that reformation is inappropriate because the mistake was one of law and they contend that a mistake of law does not support reformation. However, in *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 88, 367 P.2d 44 (1961), we noted:

"It has been held that a mistake of law does not excuse a party to a contract, unless it be a mutual mistake of both parties thereto, and then is analogous to a mistake of fact, but if there is mutuality of mistake, either of law or of fact, the party upon whom the burden rests must allege and prove such fact. (*Grant v. Isett*, 81 Kan. 246, 105 Pac. 1021.)"

In 17 C.J.S., Contracts § 145 (b), we find the rule stated as follows:

"The rule that mistake of law will not avoid a contract is subject to exceptions, as where the mistake resulted in failure of the contract to express the agreement . . . ."

Later, the text states:

"Where the instrument, because of a mistake of law, does not express the agreement actually entered into, equity may afford relief, as where parties who mutually agree on the terms of a contract choose and employ legal phrases which in legal effect express a meaning different from that agreed on."

Thus, as long as the mistake is mutual, even a mistake of law may justify relief from the contractual terms. There is no dispute, under the evidence herein, that the lease ultimately signed by Mrs. Hillard did not express the terms agreed upon: that no portion of the Hillard land could be unitized with other leased lands. Plaintiffs argue that more than mutual mistake must be shown to justify reformation, and they rely upon *Janicke v. Telephone Co.*, 96 Kan. 309, 150 Pac. 633 (1915). The essence of *Janicke*, however, is that the equities must justify reformation. The *Janicke* court, at 311, says:

"The mistake must be such that the parties are in effect unintentionally made to do something which would confer undue advantage or cause unjust prejudice unless corrected."

Here, according to the testimony of Mrs. Hillard and Darlene Butts, it is clear that unitization was never intended. The effect of unitization would be to deny the Hillard lessors a portion of their royalties, which would be unjust because they never intended to share royalties from wells on their property with any other landowners. While the unitization would confer a right upon the plaintiffs to share in the royalties from the Hillard well, plaintiffs' rights depend upon an effective unitization; without a proper unitization, plaintiffs are entitled to nothing from the well on the Hillard property.

Plaintiffs contend that the intervention of third-party rights—their rights under the unitization—precludes reformation. However, whether they acquired any rights as a result of the purported unitization depends entirely upon the validity of the unitization. Creation of a valid unit would create vested rights, but this unit was created pursuant to an invalid lease clause and therefore is not a valid unit. We hold that plaintiffs' rights depend upon the creation of a valid unit. Since no valid unit was created, no third-party rights intervene. The trial court did not err in reforming the lease.

The final issue raised is whether a valid unit may be unilaterally terminated by a lessee without the consent of all lessors whose leases have been unitized. Since we have held that no valid unit was formed, the final issue is moot.

The judgment of the trial court is affirmed.