BETACO, INC., Plaintiff–Appellee,

v.

CESSNA AIRCRAFT COMPANY, Defendant–Appellant.

No. 93–2819.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1994.

Decided Aug. 12, 1994.

that Cessna had breached this warranty, and Betaco was awarded damages of $150,000 with interest. We reverse the district court's entry of partial summary judgment in favor of Betaco on the threshold integration issue, concluding that a question of fact exists as to the parties' intent that can be resolved only after a factual hearing before the district court.

## I. BACKGROUND

### A. Facts

Betaco is a Delaware corporation headquartered in Indiana; it is a holding company that acquires aircraft for sale or lease to other companies and also for the personal use of J. George Mikelsons, the company owner. Betaco leases aircraft to Execujet and also to American Transair, an airline that Mikelsons founded in 1973 and of which he is the chairman and chief executive. Both companies interlock with Betaco. Mikelsons is himself an experienced pilot.

In late 1989, Betaco became interested in a new aircraft known as the CitationJet to be manufactured by Cessna, a Kansas corporation. Mikelsons contacted Cessna and asked for information about the forthcoming plane. On January 25, 1990, Cessna forwarded to Mikelsons a packet of materials accompanied by a cover letter which read as follows:

Dear Mr. Mikelsons:

We are extremely pleased to provide the material you requested about the phenomenal new CitationJet.

Although a completely new design, the CitationJet has inherited all the quality, reliability, safety and economy of the more than 1600 Citations before it. At 437 miles per hour, the CitationJet is much faster, more efficient, and has more range than the popular Citation I. And its luxurious first-class cabin reflects a level of comfort and quality found only in much larger jets.

And you get all this for less than an ordinary turbo-prop!

If you have questions or need additional information about the CitationJet, please

Brian T. Hunt, J.C. Buehler (argued), Indianapolis, IN, for plaintiff-appellee.

Ariane Schallwig–Johnson, Stephen L. Vaughan (argued), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for defendant-appellant.

Before FLAUM and ROVNER, Circuit Judges, and WILLIAMS, District Judge.\*

ILANA DIAMOND ROVNER, Circuit Judge.

Betaco, Inc. ("Betaco") agreed in 1990 to purchase a six-passenger CitationJet from the Cessna Aircraft Company ("Cessna"). Betaco's decision was based in part on Cessna's representation in a cover letter accompanying the purchase agreement that the new jet was "much faster, more efficient and has more range than the popular Citation I," a model with which Betaco was familiar. After advancing $150,000 toward the purchase of the new plane, Betaco became convinced that the CitationJet would not have a greater range than the Citation I with a full passenger load and decided to cancel the purchase. When Cessna refused to return Betaco's deposit, Betaco filed suit in diversity claiming, inter alia, that Cessna had breached an express warranty that the CitationJet had a greater range than the Citation I. The district court rejected Cessna's contention that the purchase agreement signed by the parties was a fully integrated document that precluded Betaco's attempt to rely on this warranty. A jury concluded that the cover letter's representation as to the range of the plane did amount to an express warranty and

\* The Honorable Ann Claire Williams, of the Northern District of Illinois, sitting by designation.

give me a call. I look forward to discussing this exciting new airplane with you. Sincerely,

Robert T. Hubbard

Regional Manager

App. 97. Enclosed with Hubbard's letter was a twenty-three page brochure providing general information about the CitationJet, including estimates of the jet's anticipated range and performance at various fuel and payload weights. A purchase agreement was also enclosed. The preliminary specifications attached and incorporated into that agreement as "Exhibit A" indicated that the CitationJet would have a full fuel range of 1,500 nautical miles, plus or minus four percent, under specified conditions. App. 108.

Mikelsons signed the purchase agreement on January 29, 1990 and returned it to Cessna, whose administrative director, Ursula Jarvis, added her signature on February 8, 1990. The agreement occupied both sides of a single sheet of paper. As completed by the parties, the front side reflected a purchase price of $2.495 million and a preliminary delivery date of March, 1994, with Betaco reserving the right to opt for an earlier delivery in the event one were possible. The payment terms required Betaco to make an initial deposit of $50,000 upon execution of the contract, a second deposit of $100,000 when Cessna gave notice that the first prototype had been flown, and a third deposit of $125,000 at least six months in advance of delivery. The balance was to be paid when the plane was delivered. The agreement expressly incorporated the attached preliminary specifications, although Cessna reserved the right to revise them "whenever occasioned by product improvements or other good cause as long as such revisions do not result in a reduction in performance standards." Item number 9 on the front page stated:

The signatories to this Agreement verify that they have read the complete Agreement, understand its contents and have full authority to bind and hereby do bind their respective parties.

Following this provision, in a final paragraph located just above the signature lines (written in capital lettering that distinguished this provision from the preceding provisions), the agreement stated:

PURCHASER AND SELLER ACKNOWLEDGE AND AGREE BY EXECUTION OF THIS AGREEMENT THAT THE TERMS AND CONDITIONS ON REVERSE SIDE HEREOF ARE EXPRESSLY MADE PART OF THIS AGREEMENT. EXCEPT FOR THE EXPRESS TERMS OF SELLER'S WRITTEN LIMITED WARRANTIES PERTAINING TO THE AIRCRAFT, WHICH ARE SET FORTH IN THE SPECIFICATION (EXHIBIT A), SELLER MAKES NO REPRESENTATIONS OR WARRANTIES EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR OTHERWISE WHICH EXTEND BEYOND THE FACE HEREOF OR THEREOF. THE WRITTEN LIMITED WARRANTIES OF SELLER ACCOMPANYING ITS PRODUCT ARE IN LIEU OF ANY OTHER OBLIGATION OR LIABILITY WHATSOEVER BY REASON OF THE MANUFACTURE, SALE, LEASE OR USE OF THE WARRANTED PRODUCTS AND NO PERSON OR ENTITY IS AUTHORIZED TO MAKE ANY REPRESENTATIONS OR WARRANTIES OR TO ASSUME ANY OBLIGATIONS ON BEHALF OF SELLER. THE REMEDIES OF REPAIR OR REPLACEMENT SET FORTH IN SELLER'S WRITTEN LIMITED WARRANTIES ARE THE ONLY REMEDIES UNDER SUCH WARRANTIES OR THIS AGREEMENT. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR GOODWILL, LOSS OF USE, LOSS OF TIME, INCONVENIENCE, OR COMMERCIAL LOSS. THE ENGINES AND ENGINE ACCESSORIES ARE SEPARATELY WARRANTED BY THEIR MANUFACTURER AND ARE EXPRESSLY EXCLUDED FROM THE LIMITED WARRANTIES OF SELLER. THE LAWS OF SOME STATES DO NOT PERMIT

**CERTAIN LIMITATIONS ON WARRANTIES OR REMEDIES. IN THE EVENT THAT SUCH A LAW APPLIES, THE FOREGOING EXCLUSIONS AND LIMITATIONS ARE AMENDED INSOFAR AND ONLY INSOFAR, AS REQUIRED BY SAID LAW.**

App. 99 ¶ 9 (emphasis in original). On the reverse side, the agreement included the following integration clause among its "General Terms":

> This agreement is the only agreement controlling this purchase and sale, express or implied, either verbal or in writing, and is binding on Purchaser and Seller, their heirs, executors, administrators, successors or assigns. This Agreement, including the rights of Purchaser hereunder, may not be assigned by Purchaser except to a wholly-owned subsidiary or successor in interest by name change or otherwise and then only upon the prior written consent of Seller. Purchaser acknowledges receipt of a written copy of this Agreement which may not be modified in any way except by written agreement executed by both parties.

App. 100, Section IV ¶ 7.

In early 1992, Paul Ruley and another Betaco employee visited Cessna's facilities in order to select the radio and navigational equipment to be installed in the plane. In the course of his work as an administrator for Execujet and American Transair, Ruley assesses the suitability of aircraft for particular charter flights based on the distance, passenger load, fuel, aircraft weight, and runway requirements. After his visit to Cessna, Ruley completed some calculations concerning the CitationJet and showed them to Mikelsons. By Ruley's estimate, the new jet would have a greater range than its predecessor, the Citation I, when carrying three to five passengers; but with a full passenger load of six (plus two crew members), the CitationJet would have a range no greater than or slightly less than that of the Citation I. Ruley also believed that the new plane would not meet the full fuel range of 1,500 nautical miles set forth in the preliminary specifications.

After seeing Ruley's numbers, Mikelsons contacted Cessna in March or April 1992. The testimony at trial was in conflict as to exactly what Cessna personnel told Mikelsons about the range of the new plane. In any case, Mikelsons was not satisfied that the CitationJet would live up to his expectations and decided to cancel the purchase. On April 16, 1992, Mick Hoveskeland of Cessna wrote to Mikelsons accepting the cancellation and offering to apply Betaco's deposit toward the purchase of another aircraft. Cessna subsequently refused Betaco's demand for a return of the deposit, however, invoking the contract's proviso that "all cash deposits shall be retained by [Cessna] not as a forfeiture but as liquidated damages for default if this Agreement is canceled or terminated by [Betaco] for any cause whatsoever...." Betaco proceeded to file this suit.

B. Proceedings Below

Betaco filed a three-count complaint against Cessna on May 12, 1992. In Count I, Betaco alleged that Cessna had breached the warranty contained in the preliminary specifications that the CitationJet would have a full fuel range of 1,500 nautical miles, plus or minus four percent. In Count II, Betaco alleged that Cessna had also expressly warranted by way of the cover letter accompanying the purchase agreement that the CitationJet would have a range greater than that of the Citation I, and that Cessna had breached this warranty as well. In Count III, Betaco contended that Cessna had breached its duty of good faith in refusing to return the deposit of $150,000. Shortly after the case was filed, the parties consented to final disposition by the magistrate judge.

At the completion of discovery, the parties filed cross-motions for partial summary judgment on Count II. Betaco asked the Court to find as a matter of law that Cessna had expressly warranted that the CitationJet would have a range greater than the range of the Citation I. Cessna asked the Court to find that the purchase agreement was a fully integrated document that excluded any warranties not set forth within the agreement itself.

The district court granted partial summary judgment in favor of Betaco on Count II. The court found that Hubbard's January 25, 1990 cover letter to Mikelsons did, in fact, contain an express warranty to the effect that the range of the CitationJet would exceed the range of the Citation I. The court then considered whether the purchase agreement was a fully integrated document that would rule out extrinsic evidence concerning such an independent express warranty. Although the court acknowledged that the terms of the agreement declared it to be fully integrated and disclaimed any express warranties beyond its four corners, the court nonetheless concluded that the parties did not intend the contract to be the sole and exclusive reflection of their agreement. The court reasoned that Hubbard's representation as to the range of the CitationJet vis à vis the Citation I was not the type of term that would necessarily have been included in the contract itself; it was not, for example, so central to the agreement that Betaco would have insisted that it be written into the pre-printed purchase agreement. At the same time, the fact that the representation had been made in the cover letter accompanying the purchase agreement (which Mikelsons signed shortly after he received it) suggested to the court that the parties considered that representation to be the basis of their bargain. Finally, the court noted that the purchase agreement had not been the subject of extensive negotiation, and that Mikelsons had simply signed it without first seeking the counsel of an attorney. "Not only does this tend to excuse Betaco for failing to have the representations [as to the relative range of the jet] included in the Purchase Agreement, but it minimizes the impact of the warranty limitation and contract integration clauses in the Purchase Agreement." Mem.Op. at 8.

Betaco had also moved to dismiss Count III of the complaint, and the Court granted this request. The court noted that Betaco had failed to allege any dishonesty on the part of Cessna. Betaco might have a claim for contractual bad faith if Cessna had admitted a breach of the contract and yet insisted on keeping the deposit, the court suggested, but in this case Cessna contended that it had breached no warranty in the purchase agree-

ment and disclaimed any warranty beyond that agreement.

The case proceeded to trial on Counts I and II. In the midst of trial, the court granted Cessna's motion to reconsider the summary judgment ruling on Count II to the extent of allowing the jury to decide whether the representation in Hubbard's letter amounted to a warranty. The jury subsequently found in Betaco's favor on Count II, concluding that Hubbard's letter did contain a warranty that the CitationJet's range exceeded that of the Citation I and that Cessna had breached this warranty. It found in Cessna's favor on Count I, however, concluding that Cessna had not breached the express warranty as to full fuel range of 1,500 nautical miles. The district court subsequently entered judgment in Betaco's favor on Count II and ordered Cessna to pay damages of $150,000 (the amount of the deposit), prejudgment interest of $17,630.14, and post-judgment interest at the rate of 3.54 percent.

## II. ANALYSIS

The sole issue before us is whether the district court erred in concluding that the contract signed by Betaco and Cessna was not a fully integrated contract containing a complete and exclusive statement of the parties' agreement. Cessna does not challenge the jury's determination that Hubbard's representation as to the relative range of the CitationJet constituted an express warranty. Rather, Cessna's contention is that because the purchase agreement was, contrary to the district court's determination, fully integrated, Betaco was precluded from attempting to establish any additional warranty via extrinsic evidence (in this case, Hubbard's cover letter). Both parties agree that we should look to Kansas law in resolving this issue; their contract contains a provision that both the agreement and the parties' legal relationship shall be determined in accordance with Kansas commercial law, including the Uniform Commercial Code ("U.C.C.") as adopted by the Kansas legislature. App. 100, § IV ¶ 8.

The provision of the U.C.C. that is central to this case is U.C.C. section 2–202, found at section 84–2–202 of the Kansas Statutes:

Final written expression: Parol or extrinsic evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 84–1–205) or by course of performance (section 84–2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Kan.Stat.Ann. § 84–2–202. The parties agree that they intended the signed purchase contract as a final expression of the terms set forth within its four corners. Betaco, however, has relied on Hubbard's cover letter as evidence of a "consistent additional term" of the agreement. Section 2–202(b) bars that evidence (and thus Betaco's claim for breach of the warranty in Hubbard's letter) if the parties intended the signed contract to be the "complete and exclusive" statement of their agreement.

■ An initial question arises as to the appropriate standard of review. Cessna urges us to review the district court's decision de novo, whereas Betaco contends that the court's ruling was a factual determination that we may review for clear error only.

Although the rule set forth in section 2–202 is superficially a rule of evidence, Kansas does not treat it as such: " 'The parol evidence rule is not a rule of evidence, but of substantive law. Its applicability is for the court to determine, and, when the result is reached it is a conclusion of substantive law.' " *In re Estate of Goff*, 191 Kan. 17, 379 P.2d 225, 234 (1963) (quoting *Phipps v. Union Stock Yards Nat'l Bank*, 140 Kan. 193, 34 P.2d 561, 563 (1934)); *see also Prophet v. Builders, Inc.*, 204 Kan. 268, 462 P.2d 122,

125 (1969); *Willner v. University of Kansas*, 848 F.2d 1020, 1022 (10th Cir.1988) (per curiam), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989). We have likewise treated the rule as a substantive one, and have accordingly considered the determination of whether or not an agreement was completely integrated to be a legal determination subject to de novo review. *Merk v. Jewel Food Stores*, 945 F.2d 889, 893 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992); *Calder v. Camp Grove State Bank*, 892 F.2d 629, 632 (7th Cir.1990) (applying Illinois law).

Betaco correctly points out, however, that insofar as this determination turns on the intent of the contracting parties, it poses a factual question. *See Willner*, 848 F.2d at 1022 n. 3; *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 763 (10th Cir.1983). Thus, in cases where the integration assessment amounts to "a predominantly factual inquiry, revolving around the unwritten intentions of the parties instead of interpretation of a formal integration clause," courts have treated the district court's determination as a finding of fact subject to review only for clear error. *Northwest Cent. Pipeline Corp. v. JER Partnership*, 943 F.2d 1219, 1225 (10th Cir.1991); *Transamerica Oil*, 723 F.2d at 763; *see also In re Pearson Bros. Co.*, 787 F.2d 1157, 1161 (7th Cir.1986) ("When a court interpreting a contract goes beyond the four corners of the contract and considers extrinsic evidence, the court's determination of the parties' intent is a finding of fact.").

■ Yet, in this case, the district court decided the question on summary judgment. Essentially, the court determined that the evidence before it could only be construed in one way, and that Betaco was entitled to judgment as a matter of law on the integration issue. Thus, the precise question before us is not who should prevail *ultimately* on the integration issue, but whether it was appropriate to enter partial summary judgment in favor of Betaco and against Cessna on the matter. Our review of that particular determination is of course, de novo, as it would be in any other appeal from

the grant of summary judgment. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983) (when hearing on cross-motions for summary judgment amounts to a trial, district court's findings are subject to review for clear error; but filing of cross-motions does not automatically empower district court to dispense with assessment of whether material fact questions exist, and absent parties' stipulation to trial based on documents, appellate court will engage in de novo review employing usual summary judgment standards), *appeal dismissed and cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983); *see also Market Street Assocs. Ltd. Partnership v. Frey,* 941 F.2d 588, 590 (7th Cir.1991). *See generally, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1453 (7th Cir.1994). We examine the record in the light most favorable to Cessna, granting it the benefit of all reasonable inferences that may be drawn from the evidence. *Id.*[1] "If we find a genuine issue as to any fact which might affect the outcome of the case, summary judgment will have been inappropriate and we will reverse." *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir.1994).

 The familiar rule of contractual interpretation is that absent an ambiguity, the intent of the parties is to be determined from the face of the contract, without resort to extrinsic evidence. *Metropolitan Life Ins. Co. v. Strnad,* 255 Kan. 657, 876 P.2d 1362, at 1366 (1994); *First Nat'l Bank of Hutchinson v. Kaiser,* 222 Kan. 274, 564 P.2d 493, 496 (1977); *Rupe v. Triton Oil & Gas Corp.,* 806 F.Supp. 1495, 1500 (D.Kan.1992); *United States v. Ables,* 739 F.Supp. 1439, 1445 (D.Kan.1990). *See also, e.g., Board of Trustees of Univ. of Illinois v. Insurance Corp. of Ireland, Ltd.,* 969 F.2d 329, 332 (7th Cir. 1992). Yet, the drafters of section 2–202 rejected any presumption that a written contract sets forth the parties' entire agreement. *See* Kan.Stat.Ann. § 84–2–202, Official U.C.C. Comment (1); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 1991 WL 151074, at *8 (D.Kan. July 11, 1991). Instead, in ascertaining whether the parties intended their contract to be completely integrated, a court looks beyond the four corners of the document to the circumstances surrounding the transaction, "including the words and actions of the parties." *Burge v. Frey,* 545 F.Supp. 1160, 1170 (D.Kan.1982). *Mid Continent Cabinetry* identifies the relevant considerations:

The focus is on the intent of the parties. *Sierra Diesel Injection Service v. Burroughs Corp.,* 890 F.2d 108, 112 (9th Cir. 1989). Section 2–202 does not offer any tests for determining if the parties intended their written agreement to be integrated. Comment three to § 2–202 offers one measure of when a statement is complete and exclusive: "If the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact." The courts have looked to several factors, not just the writing, in deciding if the writing is integrated. These factors include merger or integration clauses, B. Clark & C. Smith, *The Law of Product Warranties* ¶ 4.04[1] and [2] at 4–37—4–40 (1984) (1990 Supp.); disclaimer clauses, *see, e.g., St. Croix Print-*

---

1. Betaco suggests that Cessna is not entitled to the benefit of all reasonable inferences because it was Cessna that sought summary judgment on the integration question. Betaco Br. at 9. This mistaken contention ignores both the context and the outcome of the parties' cross-motions, however. It is true that Betaco did not explicitly ask for a determination on summary judgment that the purchase agreement was not fully integrated. Betaco did, however, seek partial summary judgment on the merits of its warranty claim, and the substance of that claim could not be reached unless and until the court first determined, in accord with U.C.C. section 2–202, that the signed purchase agreement was not a fully integrated document and that evidence concerning additional terms was therefore admissible. That is exactly what the court ultimately ruled on summary judgment, a determination that was clearly adverse to Cessna. Thus, in deciding whether there was any dispute of material fact that precluded this ruling, we must consider the record in the light most favorable to Cessna, not (as Betaco would apparently have us do) the other way around.

*ing Equipment, Inc. v. Rockwell Intern. Corp.,* [428 N.W.2d 877, 880 (Minn.App. 1988) ]; the nature and scope of prior negotiations and any alleged extrinsic terms, J. White and R. Summers, *Uniform Commercial Code* § 2–10 at 108 (3d ed. 1988); and the sophistication of the parties, *Sierra Diesel Injection Service,* 890 F.2d at 112.

1991 WL 151074, at *8. *See also Transamerica Oil,* 723 F.2d at 763; *Ray Martin Painting, Inc. v. Ameron, Inc.,* 638 F.Supp. 768, 773 (D.Kan.1986).

■ We look first to the warranty limitation and integration clauses of the purchase agreement, as these speak directly to the completeness and exclusivity of the contract. The warranty limitation clause states that "[e]xcept for the express terms of seller's written limited warranties pertaining to the aircraft, which are set forth in the specification (Exhibit A), [Cessna] makes no representations or warranties express or implied, of merchantability, fitness for any particular purpose, or otherwise *which extend beyond the face hereof or thereof.*" (Emphasis supplied.) The clause goes on to admonish the buyer that no individual is authorized to make representations or warranties on behalf of Cessna. On its face, this clause might be construed to disavow the types of representations found in Hubbard's letter to Mikelsons. However, as a general rule, express warranties, once made, cannot be so easily disclaimed. Section 2–316(1) of the Kansas U.C.C. provides that "subject to the provisions of this article on parol or extrinsic evidence (K.S.A. § 84–2–202), negation or limitation [of an express warranty] is inoperative to the extent such construction is unreasonable." Kan.Stat.Ann. § 84–2–316(1); *see L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 570 (7th Cir.1993); *Transamerica Oil,* 723 F.2d at 762. The commentary explains that the purpose of this provision is to "protect a buyer from unex-

pected and unbargained language of disclaimer." Kans.Stat.Ann. 84–2–316(1), Official U.C.C. Comment (1); *see also* Kan.Stat. Ann. 84–2–313, Official U.C.C. Comment (4), Kansas Comment 1983; *Hemmert Agric. Aviation, Inc. v. Mid–Continent Aircraft Corp.,* 663 F.Supp. 1546, 1553 (D.Kan.1987); *Ray Martin Painting,* 638 F.Supp. at 772–73. On the other hand, the disclaimer rule is, by its express terms, subject to the provisions of section 2–202 (*see* Kan.Stat.Ann. 84–2–316(1) & Kansas Comment 1983); thus, if the signed contract is deemed fully integrated, the plaintiff is precluded from attempting to establish any express warranty outside the signed contract. *Jordan v. Doonan Truck & Equip., Inc.,* 220 Kan. 431, 552 P.2d 881, 884 (1976); *Ray Martin Painting,* 638 F.Supp. at 774; *see also Jack Richards Aircraft Sales, Inc. v. Vaughn,* 203 Kan. 967, 457 P.2d 691, 696 (1969); *Prophet,* 462 P.2d at 125–26.

■ We thus turn to the integration clause of the contract. Although not dispositive, "the presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them...." *L.S. Heath & Son, Inc.,* 9 F.3d at 569 (citing *Sierra Diesel,* 890 F.2d at 112; R. Anderson, *Uniform Commercial Code,* § 2–202:25 (1983)); *see also Ray Martin Painting,* 638 F.Supp. at 773–74. Here the clause states that "[t]his agreement is the *only* agreement controlling this purchase and sale, express or implied, either verbal or in writing, and is binding on Purchaser and Seller" and that the agreement "may not be modified in any way except by written agreement executed by both parties." (Emphasis supplied.)[2] The language is simple and straightforward; and Betaco does not suggest that a reasonable buyer would find it difficult to comprehend. On the other hand, Betaco does note, as the district court did (Mem.Op. at 8), that this was, like most other provisions in the contract, a pre-print-

**2.** Betaco points out that the integration clause purports only to disavow other *agreements,* not other *warranties.* We do not find the distinction persuasive, however. The essence of the integration inquiry, after all, is whether the parties intended their written contract to embody the entirety of their agreement; if so, extrinsic evidence of an additional warranty that Cessna pur-

portedly made cannot be admitted. Thus, although the integration clause speaks in terms of agreements rather than warranties, if it is given effect and the signed purchase contract is deemed to be a fully integrated agreement, it effectively operates so as to preclude the plaintiff from relying on purported warranties beyond the four corners of that agreement.

ed clause that was not the subject of negotiation by the parties. Yet, that fact alone does not render the provision unenforceable. *See Northwestern Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 377 (7th Cir.1990). The clause was not buried in fine print, nor was it written so as to be opaque. *See id.* It was relegated to the back of the contract rather than the front, but the front page admonished the signatories in bold, capitalized lettering that the terms on the back were part of the agreement, and although the reverse side contained a number of provisions, they were neither so many nor so complicated that the reader would have given up before he or she reached the integration clause. Mikelsons signed the contract, and there is no dispute that he had the opportunity to review it in as much detail as he wished before signing it. Under these circumstances, the integration provision should have come as no surprise to Betaco. *Compare Transamerica Oil,* 723 F.2d at 763 (where plaintiff's order was taken over telephone, document that plaintiff received and signed upon delivery did not constitute fully integrated agreement); *Hemmert,* 663 F.Supp. at 1553 (same). In our view, therefore, the clause is strong evidence that the parties intended and agreed for the signed contract to be the complete embodiment of their agreement.

The district court focused on another circumstance that courts frequently consider in assessing the degree to which a contract is integrated: is the term contained in a purported warranty outside the contract one that the parties would have included in the contract itself had they intended it to be part of the agreement? U.C.C. § 2–202, Official Comment (3); *Mid–Continent Cabinetry,* 1991 WL 151074, at \*8. The court thought that Hubbard's representation as to the relative range of the CitationJet was not such a term, although neither the court nor Betaco has cited any evidence in the record to support that proposition. The court did note that "[t]he representation made by Mr. Hubbard was not so formally presented nor central to the purchase that Mr. Mikelsons of Betaco would most likely have insisted it be included, especially where the Purchase Agreement was a standard form. The representation did not include the word 'warranty,' a red flag that might have clued a non-attorney into the necessity of including it in the Purchase Agreement." Mem.Op. at 7. Our analysis is somewhat different on this score, however.

We are not persuaded that the range of the aircraft was not something that certainly would be included in the agreement. On the contrary, the specifications made part of the contract do contain an express representation as to the range of the CitationJet, and, in fact, it was that warranty that formed the basis for Count I of Betaco's complaint.[3] In that sense, an extraneous reference to the range of the aircraft arguably is less like a supplemental term on a subject as to which the contract is otherwise silent, and more like a potentially conflicting term that section 2–202 would explicitly exclude from admission into evidence. *See generally Souder v. Tri–County Refrigeration Co.,* 190 Kan. 207, 373 P.2d 155, 159–60 (1962) (noting the distinction between using extrinsic evidence to explain or supplement the contract and using it to vary the terms of the agreement).[4]

**3.** The informational brochure enclosed with the agreement also contains a number of references to the plane's estimated range at various loads. Betaco has not alleged that any of these estimates were inaccurate. However, the brochure did contain a page listing in highly cursory fashion (less than fifty words) the purported "Benefits" of owning a CitationJet (App. 141), including a "substantial increase over the Citation I" in "performance" and "operating efficiency." In its complaint, Betaco cited this document along with Hubbard's letter in support of the Count II breach of warranty claim, but Betaco does not rely on it here.

**4.** In footnote 6 of its opinion, the district court misappropriates the dissent's explanation of the parol evidence rule in *Intercorp., Inc. v. Pennzoil Co.,* 877 F.2d 1524 (11th Cir.1989). There, Judge Henderson noted that evidence of oral or written terms outside the four corners of the contract traditionally has been excluded " 'not because doubt exists concerning the terms' reliability, but rather because the terms are irrelevant, since the parties superseded them in the final integrated writing.' " *Id.* at 1537 (quoting M. Metzger, *The Parol Evidence Rule: Promissory Estoppel's Next Conquest?,* 36 Vand.L.Rev. 1383, 1390 (1983)). The district court found this language particularly pertinent to the case at bar, pointing out that "there is no doubt as to the reliability of the additional terms [in Hubbard's letter] because they are in writing." Mem.Op. at

The context of the representation does not alter our analysis in this regard. It may well be, as the district court emphasized, that because the statement as to the relative range of the CitationJet was contained in the cover letter accompanying the purchase agreement, Mr. Mikelsons may have given it more weight than he would a more isolated statement. Mem.Op. at 7. At the same time, as the court pointed out, the reference was informal, without language that might alert the reader that the contract should include a comparable provision. *Id.* But in our view, one might just as readily infer from this that the contents of the letter were *not* meant to supplement the purchase agreement. Recall the wording of the passage on which Betaco relies: "At 437 miles per hour, the CitationJet is much faster, more efficient, and has more range than the popular Citation I." Like the balance of the letter, this statement is long on adjectives and short on details—how much faster? how much more efficient? how much more range? [5] Consider, in contrast, the following excerpt from the specifications incorporated into the purchase agreement:

## 2. ESTIMATED PERFORMANCE (Preliminary)

### Conditions:

All estimated performance data are based on a standard aircraft and International Standard Atmosphere. Takeoff and landing field lengths are based on level, hard surface, dry runways with zero wind.

| | |
|---|---|
| Range +/− 4% (Includes Takeoff, Climb, Cruise at 41,000 Feet, Descent and 45–Minute Reserve) | At 10,000 lbs (4536 kg) TOGW 1500 nautical miles (2779 km) with full fuel |
| Stall Speed (Landing Configuration) | 81 knots (150 km/hr) (93 MPH) CAS at 9500 lbs (4309 kg) |
| Maximum Altitude | 41,000 ft (12,497 m) |
| Single Engine Climb Rate (Sea Level, ISA, 10,000 lbs) | 1070 feet per minute |
| Takeoff Runway Length (Sea Level, ISA, Balanced Field Length per FAR 25) | 2960 ft (902 m) at 10,000 lbs (4536 kg) |
| Landing Runway Length (Sea Level, ISA, per FAR 25) | 2800 ft (854 m) at 9500 lbs (4309 kg) |

6–7 n. 6. Yet, Judge Henderson's point is that the extrinsic terms, reliable or otherwise, are irrelevant where the parties record their agreement in a final, integrated writing. The very purpose of the parol evidence rule is to honor final, integrated agreements signed by autonomous parties, and excluding extraneous terms achieves that purpose. *See* 877 F.2d at 1537.

**5.** We note that the letter is apparently inaccurate as to the relative range of the CitationJet only when the jet carries the maximum of six passengers and a crew of two. As the district court pointed out, "[t]he finder of fact could find that the representation of greater range than the Cita-

tion I means greater range at most, but not necessarily all, configurations" (Mem.Op. at 10 n. 7), although the jury seemingly rejected that notion when it found in Betaco's favor on this breach of warranty claim. We would simply suggest that because such a representation is not clear on its face, we should be particularly cautious about importing it into the parties' agreement. *Cf.* Kan.Stat.Ann. 84–2–317(a) (in attempting to resolve inconsistent warranties, "[e]xact or technical specifications displace ... general language of description"); *Young & Cooper, Inc. v. Vestring,* 214 Kan. 311, 521 P.2d 281, 291 (1974).

Cruising Speed +/− 3%
(Maximum Cruise
Thrust, ISA Conditions
at 35,000 Feet)

380 kts (704 km/hr)
(437 mph) TAS
at 8500 lbs
(3856 kg) cruise weight

App. 108. This summary of the aircraft's performance capabilities is, in stark contrast to the letter, quite precise and quite explicit about the assumptions underlying each of the estimates. Given the marked difference in style and detail between these specifications and the indeterminate braggadocio in the cover letter, we find it somewhat implausible that the parties might have considered the "more range" reference to be part of their agreement yet failed to include it in the purchase contract with the level of specificity characteristic of that document.

Finally, we do not find it particularly significant that Mikelsons did not consult a lawyer before signing the purchase agreement. Again, the contract was neither lengthy nor obtuse. Nor was this a contract of adhesion. These were two seemingly sophisticated parties entering into a commercial agreement, and Mikelsons' significant experience as a pilot, as an airline executive, and as a purchaser of an earlier model of the Citation aircraft surely went a long way toward balancing whatever advantage Cessna may have enjoyed as the drafter of the agreement. *See Bowers Mfg. Co. v. Chicago Mach. Tool Co.,* 117 Ill.App.3d 226, 72 Ill.Dec. 756, 761, 453 N.E.2d 61, 66 (1983) ("the courts are less reluctant to hold educated businessmen to the terms of contracts to which they have entered than consumers dealing with skilled corporate sellers") (quoted with approval in *Ray Martin Painting,* 638 F.Supp. at 773); *see also Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1116 (7th Cir. 1983). Furthermore, there is no evidence that the contract was tainted by fraud, mutual mistake, or any other circumstance that would call into question the binding nature of the agreement. *See generally Prophet,* 462 P.2d at 126. That Betaco chose not to have the contract reviewed by an attorney before Mikelsons signed it does not, standing alone, permit Betaco to escape the operation of the terms it signed on to, including the integration clause. As the Kansas Supreme Court has stated:

This court follows the general rule that a contracting party is under a duty to learn the contents of a written contract before signing it. *Sutherland v. Sutherland,* 187 Kan. 599, 610, 358 P.2d 776 (1961). We have interpreted this duty to include the duty to obtain a reading and explanation of the contract, and we have held that the negligent failure to do so will estop the contracting party from avoiding the contract on the ground of ignorance of its contents. *Maltby v. Sumner,* 169 Kan. 417, Syl. ¶ 5, 219 P.2d 395 (1950). As a result of this duty, a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms.

*Rosenbaum v. Texas Energies, Inc.,* 241 Kan. 295, 736 P.2d 888, 891–92 (1987). *Accord Albers v. Nelson,* 248 Kan. 575, 809 P.2d 1194, 1197 (1991); *Washington v. Claassen,* 218 Kan. 577, 545 P.2d 387, 390–91 (1976); *see also Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir.1992); *Northwestern Nat'l Ins. Co. v. Donovan, supra,* 916 F.2d at 378. That we would make this assumption should come as no surprise to Betaco, for in signing the contract, Mikelsons also assented to its provision that "[t]he signatories to this Agreement verify that they have read the complete Agreement, understand its contents and have full authority to bind and hereby do bind their respective parties."

The circumstances identified by the district court do not, in sum, establish as a matter of law that the purchase agreement was not fully integrated and that extrinsic evidence of additional, consistent terms was therefore admissible. Nor has Betaco identified anything more in the record that would support partial summary judgment in its favor on this question. The district court's decision to grant partial summary judgment in favor of Betaco and against Cessna therefore must be reversed, and the jury's verdict (which was based upon the extrinsic evidence

admitted pursuant to the district court's summary judgment ruling) must be vacated.

Two options remain for us at this juncture: we may reverse the denial of Cessna's cross-motion for partial summary judgment and deem the signed purchase agreement fully integrated as a matter of law (thus entitling Cessna to judgment on Count II) or, in the event we detect factual disputes that preclude this determination on summary judgment, remand the case for a bench hearing (as the applicability of section 2–202 is, as we have noted above, a question for the court rather than the jury). We are somewhat surprised to note that although the parties ask us to draw diametrically opposed conclusions from the evidence bearing on the integration issue, neither has ever (either on appeal or in the district court) suggested that a factual hearing might be necessary in order to resolve their dispute. Instead, both parties appear confident that the issue can simply be decided one way or the other based on the summary judgment record presented to the district court.

If the only evidence offered on the question of whether the parties meant the signed purchase agreement to be fully integrated had been the two documents on which the district court relied—the agreement itself (and in particular, the warranty limitation and integration clauses of that agreement) along with the cover letter from Hubbard— we might be inclined to agree that no hearing was necessary to assess the parties' intent. The purchase agreement contains, as we have discussed above, a straightforward integration clause which, coupled with the express disclaimer of other warranties, suggests that the parties' understanding did not extend beyond the four corners of the signed contract. Against that, the very casual nature of the cover letter's remark attributing "more range" to the new CitationJet than its predecessor is, at best, only weak evidence to the contrary, particularly when the contract itself addresses the range of the new aircraft in quite specific terms. Thus, we would be most reluctant to hold that Hubbard's letter, standing alone, would provide enough support for the notion that the contract was not a complete reflection of the parties' understanding to avoid summary judgment.

But there is a bit more to the evidence that Betaco tendered. In a brief affidavit, Mikelsons offered the following background averments regarding Hubbard's "more range" remark:

3. In late 1989 and prior to my receipt of Robert Hubbard's letter of January 25, 1990, and my execution of the Purchase Agreement dated January 29, 1990, I had several telephone conversations with Mr. Hubbard and other Cessna representatives who were aware of my interest in possibly purchasing a CitationJet.

4. During those conversations, I expressed the requirement that the CitationJet have or possess greater range (that is, available flying distance) than the Cessna Citation I which Betaco owned and that I occasionally flew. The Cessna representatives assured me that the range of the CitationJet was greater than the range of the Citation I.

5. I specifically relied on the verbal representations and statements of Cessna representatives and Robert Hubbard's letter confirming his prior verbal representation that the range of the CitationJet was greater than that of the Citation I when I executed the Purchase Agreement.

R. 61, Ex. B. Again to our surprise, neither party has so much as mentioned these averments in the briefing, but we find them to be significant. In part they bear on a question that the jury has already decided—did Cessna expressly warrant that the CitationJet had a range greater than the Citation I's?[6] But they also bear in part on whether the purchase agreement, although it did address the range of the CitationJet, set forth the parties' entire understanding as to the range capabilities of the plane, particularly as compared to the earlier model. If, in fact, there were substantial discussions preceding Betaco's commitment to the purchase of the CitationJet focusing specifically on the range of the new jet vis à vis the Citation I, one might

---

**6.** Although Mikelsons' affidavit refers to verbal representations about the range of the CitationJet that preceded Hubbard's letter, Betaco has not relied on such representations as warranties in and of themselves. *See* Complaint at 3.

infer that the signed agreement did not, ultimately, embody the complete agreement between the parties. In that respect, the case could be viewed as being more like *Transamerica Oil*, for example, where the court concluded that the parties' agreement extended beyond the signed "Sales and Service Invoice" to include the representations that the plaintiff had seen in trade journals and the assurances that the seller had given it over the telephone prior to the purchase. 723 F.2d at 761, 763. We do not mean to suggest that the evidence ought to be viewed in that way, of course. Although Mikelsons' affidavit appears to characterize Hubbard's letter as the culmination of prior discussions about the range of the new plane, the wording of the letter is far more consistent with that of a standard promotional letter than a confirmation of prior discussions concerning what Betaco contends was an essential contract term. Moreover, as we have noted, Mikelsons was an apparently sophisticated businessman who had the opportunity to review the contract at length before deciding to purchase, very much in contrast to the situation in *Transamerica Oil*. Still, as we consider the merits of Cessna's cross-motion for summary judgment, we must take care to give Betaco the benefit of every reasonable inference that may be drawn from the record. Construed favorably to Betaco, we believe that Mikelsons' affidavit raises a question of fact as to whether the parties considered the purchase contract to be the complete and exclusive statement of their agreement.

Both parties seem to have forgotten that where competing inferences may be drawn from facts that are otherwise undisputed, summary judgment is improper. *See Texas Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 982 (5th Cir.1992) (citing *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 274 n. 15 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987)); *see generally Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993) (collecting cases). Just as we believe that plausible inferences from the record rendered partial summary judgment in Betaco's favor on the integration issue improper, so we believe that contrary inferences preclude summary judgment in favor of Cessna. We therefore remand the case for a hearing in which the district judge will sit as a finder of fact and decide, based on whatever evidence the parties choose to submit, whether the parties intended the purchase agreement to be the complete embodiment of their understanding or not. In the event the court answers this question in the affirmative, of course, the rule set forth in section 2–202 would bar Betaco's warranty claim and compel the entry of final judgment in Cessna's favor on Count II of the complaint. We express no opinion as to the appropriate outcome of this hearing; that is a matter for the district court to decide based on the totality of the circumstances and the resolution of the competing inferences that the evidence permits.

## III. CONCLUSION

Because we find that the record before the court on summary judgment was reasonably subject to contrary assessments of whether the parties intended their signed contract to be the complete embodiment of their agreement, we Reverse the entry of partial summary judgment against Cessna on this question and Vacate the final judgment subsequently entered in favor of Betaco on Count II of the complaint. The case is Remanded for a factual hearing before the bench on the integration issue and for appropriate disposition based on the outcome of that hearing. Circuit Rule 36 shall not apply on remand.